People v Grimes (2018 NY Slip Op 07038)

People v Grimes

2018 NY Slip Op 07038 [32 NY3d 302]

October 23, 2018

DiFiore, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 6, 2019

[*1]

The People of the State of New York, Respondent,
v
Jakim Grimes, Appellant.

Argued September 13, 2018; decided October 23, 2018

People v Grimes, 2017 NY Slip Op 69059(U), affirmed.

{**32 NY3d at 304} OPINION OF THE COURT

Chief Judge DiFiore.

In People v Andrews (23 NY3d 605, 616 [2014]), we held that counsel's failure to file a timely criminal leave application (CLA) to this Court within the 30-day statutory time frame provided by CPL 460.10 (5) (a), or move pursuant to CPL 460.30 within the one-year grace period for an extension to cure the error, does not deprive a defendant of a constitutional right to the effective assistance of counsel or due process under the Sixth and Fourteenth Amendments of the United States Constitution. In the absence of a constitutional violation, a defendant cannot resort to coram nobis to abrogate the one-year time limitation on the remedy provided in CPL 460.30 for the improper conduct of his or her attorney in failing to file a timely CLA. We left open the question of whether a more protective rule should be recognized under the New York State Constitution (id. at 616). Today, we hold the same rule applies under article I, § 6 of the New York State Constitution. Thus, defendant is not entitled to a writ of error coram nobis to bypass the limitation set by the legislature in CPL 460.30 in which to file a CLA seeking leave to appeal to this Court.{**32 NY3d at 305}
I.
In 2012, defendant was convicted upon a plea of guilty of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. Counsel filed a notice of appeal [*2]on defendant's behalf and perfected the first-tier appeal. The Appellate Division affirmed the judgment of conviction, by order entered November 13, 2015 (133 AD3d 1201 [4th Dept 2015]), a copy of which was served on appellate counsel by the People with notice of entry on November 17, 2015, starting the CPL 460.10 (5) 30-day time frame in which defendant must make application pursuant to CPL 460.20 for a certificate granting leave to appeal for a discretionary, second-tier appeal to the Court of Appeals. The very next day, counsel wrote to defendant to inform him that he was "in the process of drafting the leave application to the court of appeals" and that defendant "should receive it shortly." Counsel drafted the CLA letter, but never sent it to the Court or to defendant.
More than a year later, defendant was released from prison. Approximately six weeks later, counsel received a letter from defendant, dated January 9, 2017, inquiring about the status of the CLA. Having failed to timely file an application for leave to this Court or seek an extension of time to file such an application pursuant to CPL 460.30, counsel moved for coram nobis relief in the Appellate Division, dated January 20, 2017, requesting "an extension of time to file an application for leave to appeal to the Court of Appeals."
Counsel argued that defendant was deprived of his right to due process and his right to counsel under article I, § 6 of the State Constitution, as well as under the Sixth and Fourteenth Amendments of the United States Constitution. He alleged that "due to law office failure and [his] lack of oversight" the CLA "was never timely filed and served and the case was later mistakenly marked as closed." As to the due diligence of defendant, counsel concluded, "[r]elying upon our representation, [defendant] could not have reasonably discovered within a one-year period that his appellate rights were not preserved." Counsel relied on People v Syville (15 NY3d 391 [2010]), wherein we held that coram nobis is the appropriate procedural remedy in New York to afford relief for a violation of the Due Process Clause of the United States Constitution resulting from the deprivation of a first-tier appeal due to counsel's ineffectiveness in failing to file a notice of appeal within the one-{**32 NY3d at 306}year time limitation of CPL 460.30. Addressing a second-tier appeal in Andrews, however, we held that there is no equivalent federal constitutional due process or ineffective assistance claim for counsel's failure to seek leave to appeal to the Court of Appeals (see 23 NY3d at 616). Nonetheless, here, counsel argued that "New York Courts are free to extend constitutional protections beyond those required by the United States Constitution" and urged the Appellate Division to grant coram nobis relief to preserve defendant's "fundamental right to appeal." The People filed no papers in opposition.
The Appellate Division denied defendant's motion for a writ of error coram nobis (148 AD3d 1724 [4th Dept 2017]). A Judge of this Court granted leave to appeal (29 NY3d 1127 [2017]). We now affirm the Appellate Division order.
II.
By coram nobis, defendant seeks to extend his time to file a CLA for a discretionary, second-tier appeal to this Court beyond the time limitation set by the legislature in CPL 460.30. Since such a motion "must be made with due diligence after the time for the taking of such appeal has expired, and in any case not more than one year thereafter" (CPL 460.30 [1] [emphasis added]), defendant now seeks to carve out an exception to the statute's command. Defendant's entitlement to coram nobis relief requires "a violation of the defendant's constitutional rights not appearing on the record, no negligence which could be attributed to the defendant for failure to have brought the alleged error to the attention of the court . . . , and further, that the current proceeding is not a substitute for a new trial, appeal or other statutory remedy" (People v Bachert, 69 NY2d 593, 598 [1987] [internal quotation marks and citation omitted]). Historically, coram nobis was limited to correcting fundamental or constitutional errors in the judgment entered in the trial court. Prior to the enactment of the Criminal Procedure Law, we expanded the writ's scope to "afford the defendant a remedy in those cases in which no other avenue of judicial relief appeared available" (People v Hairston, 10 NY2d 92, 93-94 [1961]; see Matter of Bojinoff v People, 299 NY 145, 151 [1949]). Specifically, we enlarged coram nobis to include claims premised on the loss of the defendant's right to a first-tier appeal, or a lack of meaningful review on that direct appeal from the conviction caused by counsel's deficient legal performance, as well as state action or lack thereof (see e.g. People {**32 NY3d at 307}v De Renzzio, 14 NY2d 732, 733 [1964] [court-appointed lawyer failed to prosecute a first-tier appeal in a murder case]; Hairston, 10 NY2d at 93 [prison authorities prevented defendant's efforts to take and perfect a first-tier appeal]). Although "[m]ost of the common-law, coram nobis types of relief were abrogated when the Criminal Procedure Law was enacted" (Andrews, 23 NY3d at 611, citing People v Corso, 40 NY2d 578, 580 [1976]), that legislation "did not expressly abolish the common-law writ of coram nobis or necessarily embrace all of its prior or unanticipated functions" (Bachert, 69 NY2d at 599).
[*3]Therefore, in Syville, the Court recognized the continuing, albeit limited, availability of a "coram nobis type[ ] of relief [largely] abrogated when the Criminal Procedure Law was enacted"; specifically, we permitted the continued use of a type of "so-called 'Montgomery claim' " (Andrews, 23 NY3d at 610-611). In People v Montgomery, we held "that every defendant has a fundamental right to appeal his conviction and that, accordingly, basic fairness and due process require that the right not be dissipated either because the defendant was unaware of its existence or counsel failed to abide by a promise to either file or prosecute an appeal" (24 NY2d 130, 132 [1969]). This Montgomery relief, whereby coram nobis was initiated in the trial court for claims premised on the loss of the right to a first-tier appeal, was codified, in a modified form, in CPL 460.30 (see Corso, 40 NY2d at 579-580).[FN1] The statute, in recognition of the appellate jurisdiction of the courts, allows a defendant to seek permission from an intermediate appellate court to file a late notice of direct appeal on specified grounds, including the improper conduct of an attorney. In addition to its due diligence requirement, the statute bars relief if more than one year has passed from the time the taking of the appeal has expired (CPL 460.30 [1]). The statute also provides for fact-finding hearings in the trial court to enable the intermediate appellate court to resolve questions of fact, including any issue as to a defendant's due diligence (see CPL 460.30 [5]). Formerly, under Montgomery, when a violation of the absolute right to appeal was found, the trial court granted the coram nobis and restarted the 30-day period to take an appeal by resentencing a defendant (see Corso, 40 NY2d at 580). The 30-day clock to{**32 NY3d at 308} take the appeal now starts upon the granting of the CPL 460.30 motion by the appellate court.
The legislature amended CPL 460.30 in 1977 to include relief for a defendant who fails to timely seek a certificate granting leave to appeal from an order of the Appellate Division to the Court of Appeals due to the improper conduct of his attorney, in addition to other grounds (see CPL 460.30 [1]). In recognition of the appellate jurisdiction of this Court, the statute provides that the motion for an extension of time is to be made to this Court and with due diligence (see id.). As the statutory language is unequivocal that the extension of time be "not more than one year" (see id.), we have held that " '[t]he one-year grace period is strictly enforced "since the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them" ' " (People v Rosario, 26 NY3d 597, 602 [2015], quoting Andrews, 23 NY3d at 611).
We have carved out rare exceptions to this one-year jurisdictional bar, excusing a late CPL 460.30 motion for the extension of time for taking a first-tier appeal as of right. We estopped the People from invoking the one-year limitation when defendant attempted to file a notice of appeal three months from when he was sentenced because prosecutors "frustrated the good faith exercise of the defendant's right to the remedy of CPL 460.30" (People v Thomas, 47 NY2d 37, 41, 43 [1979] [prosecution ignored defendant's request for information to take a first-tier appeal "while his default was still curable" and "defendant's last chance to obtain the status of an appellant was ebbing away"]).
In Syville, we were called upon to reconcile the conflict between the one-year time limitation of CPL 460.30 and counsel's unconstitutionally deficient performance causing "defendant to lose the right to perfect or obtain merits consideration" of a first-tier appeal in violation of the Due Process Clause of the United States Constitution (15 NY3d at 397). We looked to Montgomery's holding that "a defendant whose right to appeal is lost through his attorney's deficient performance should have a remedy" in determining that coram nobis was the appropriate relief (Syville, 15 NY3d at 398). Specifically, we held that when a defendant's ability to take a first-tier appeal as of right is extinguished "due solely to the unconstitutionally deficient performance of counsel in failing to file a timely notice of appeal," coram nobis is the proper procedure to remedy the{**32 NY3d at 309} constitutional error as the time to seek relief pursuant to CPL 460.30 is no longer available (see id.). However, in recognition that the remedy in Montgomery was largely superseded by the enactment of CPL 460.30, Syville was predicated on the federal constitutional right under the Fourteenth Amendment to representation by counsel in a state's first-tier appeal from a conviction (see id. at 398; see also People v Arjune, 30 NY3d 347, 356 [2017], cert denied — US —, 139 S Ct 67 [Oct. 1, 2018] [noting that Syville itself relied on the U.S. Supreme Court's reasoning in Roe v Flores-Ortega, 528 US 470 (2000)]).
[*4]
Four years later, we clarified the parameters of coram nobis under Syville in People v Kruger—a companion case in Andrews—where counsel failed to file a CLA to this Court.[FN2] We held that coram nobis relief was not available because, "[u]nlike an appeal as of right, . . . there is no federal constitutional entitlement to legal representation on a discretionary application for an appeal to a state's highest court" (Andrews, 23 NY3d at 616, citing Ross v Moffitt, 417 US 600, 615-616 [1974]; Halbert v Michigan, 545 US 605, 611-612 [2005]). "Thus, the failure to file a CLA, standing alone, does not necessarily establish" a deprivation of effective assistance of counsel—or due process—because there is no federal constitutional right to counsel under the Due Process Clause on a second-tier appeal (Andrews, 23 NY3d at 616). And, in the absence of a violation of a constitutional right, coram nobis does not lie and the statutory remedy for an extension of time to take an appeal cannot be abrogated. Andrews left open the question presented by this appeal: whether a defendant has a state constitutional right to representation to file a CLA in this Court (see id.).[FN3] {**32 NY3d at 310}
III.
There is no federal constitutional right to appellate review (see McKane v Durston, 153 US 684, 687-688 [1894]) and no state constitutional right to appellate review in a criminal case, except to the Court of Appeals where the judgment is of death and as otherwise legislatively provided (NY Const, art VI, § 3). "The Sixth Amendment does not encompass the right to appeal or the right to counsel in appellate proceedings. Nor does due process guarantee the right to an appeal" (People v West, 100 NY2d 23, 28 [2003], citing Martinez v Court of Appeal of Cal., Fourth Appellate Dist., 528 US 152, 159-161 [2000]). Indeed, "[a]t common law, appellate review of a criminal conviction, regardless of how grave the offense, was not viewed as a necessary component of elementary due process" (People v Romero, 7 NY3d 633, 636 [2006]).
In interpreting our state's constitutional right to counsel, we have stated that
"[t]he Right to Counsel Clause in the State Constitution is more restrictive than that guaranteed by the Sixth Amendment to the United States Constitution (compare, NY Const, art I, § 6, with US{**32 NY3d at 311} Const 6th, 14th Amends). Nevertheless, by resting the right upon this State's constitutional provisions guaranteeing the privilege against self-incrimination, the right to assistance of counsel and due process of law we have provided protection to accuseds far more expansive than the Federal counterpart" (see People v Bing, 76 NY2d 331, 338-339 [1990]).[FN4] 
In certain postconviction accusatory proceedings, we have held the right to counsel is required "because the outcome—liberty or imprisonment—depends upon an arbiter's determination as to the truth of assertions" affecting defendant's status (People v Garcia, 92 NY2d 726, 730 [1999]). We have never held that a defendant is entitled to a state constitutional right to counsel in all postjudgment criminal proceedings.
Even so, the U.S. Supreme Court has long established that when a state grants a defendant the absolute statutory right to appeal a criminal conviction, the Fourteenth Amendment mandates that to provide a meaningful first-tier appeal, the defendant must be afforded the right to counsel (see Douglas v California, 372 US 353, 356-357 [*5][1963]). This is because the first-tier appeal is "an integral part of the . . . trial system for finally adjudicating the guilt or innocence of a defendant" (Griffin v Illinois, 351 US 12, 18 [1956]). Invoking the Fourteenth Amendment as to whether "it is impermissible for the State to fail to assure that an indigent defendant is informed of his right to appeal" we similarly held that "the 30-day period in which [a notice of appeal must be filed] is a critical time for the defendant. It cannot be successfully argued that an indigent defendant does not have the right to counsel at this stage of his proceedings" (Montgomery, 24 NY2d at 132-133, citing Hamilton v Alabama, 368 US 52 [1961]).
"In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by {**32 NY3d at 312}intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake" (Evitts v Lucey, 469 US 387, 396 [1985]).
A first-tier appeal "is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney" (id.), and when there is a denial of a first-tier appeal due to ineffective assistance of counsel, it is a violation of the Fourteenth Amendment (see Roe, 528 US at 483; see also Halbert, 545 US at 610-611 [emphasizing both due process and equal protection considerations]).
In contrast, a second-tier appeal—where the defendant has the benefit, from the perfection of the first-tier appeal, of a prepared or original record of the trial court proceedings, briefs by both counsel on the merits of the errors that allegedly occurred at trial, and the written opinion of the intermediate appellate court determining the validity of the conviction—does not require, as a matter of constitutional law, the assignment of counsel for a meaningful appeal under the Federal Due Process Clause (see Evitts, 469 US at 402; 22 NYCRR 500.20; see also People v Hughes, 15 NY2d 172, 173 [1965] [right to the assignment of counsel to represent an indigent defendant where there is a statutory "absolute right to appeal"]; People v Borum, 8 NY2d 177, 179 [1960] [right to appeal requires a review of the merits without defendant first demonstrating the merits of entertaining the appeal]; People v Emmett, 25 NY2d 354, 357 [1969] [right to appeal includes opportunity for defendant to submit a brief]; People v Gonzalez, 47 NY2d 606, 610 [1979] [right to representation on a first-tier appeal includes the attorney's conscientious examination of the record and the law and marshalling of arguments in the briefing]).[FN5] Indeed, "[t]hese materials, [*6]supplemented by whatever submission [defendant] {**32 NY3d at 313}may make pro se, would appear to provide the [highest court] with an adequate basis for its decision to grant or deny review" (Ross, 417 US at 615).
This conclusion is fortified by the function and scope of a discretionary second-tier appeal, which is markedly different than that of a first-tier appeal.
"The critical issue in [a second-tier appellate] court . . . is not whether there has been 'a correct adjudication of guilt' in every individual case, but rather whether 'the subject matter of the appeal has significant public interest,' whether 'the cause involves legal principles of major significance to the jurisprudence of the State,' or whether the decision below is in probable conflict with a decision of the Supreme Court" (Ross, 417 US at 615 [citation omitted]).
Based on these differences, "Ross held . . . that a State need not appoint counsel to aid a poor person in discretionary appeals to the State's highest court" (Halbert, 545 US at 610, citing Ross, 417 US at 610-612). And since the constitutional right to effective assistance of counsel is entirely dependent on the existence of a constitutional right to counsel itself, there is no corresponding federal constitutional violation in the failure of counsel to take a second-tier appeal (see Evitts, 469 US at 396 n 7; Wainwright v Torna, 455 US 586, 587-588 [1982]; see also Pena v United States, 534 F3d 92, 95 [2d Cir 2008]).
That well-reasoned federal analysis is pertinent to our interpretation of the corresponding State Due Process Clause in the context of an application to the highest court in the state for leave to grant a second-tier review as "[t]he Supreme Court's analysis . . . [is] consonant with New York State law and interest[ ]" (People v Alvarez, 70 NY2d 375, 379 [1987]; see People v {**32 NY3d at 314}Kohl, 72 NY2d 191, 197 [1988]; People v Pitts, 6 NY2d 288, 291-292 [1959]; People v Pride, 3 NY2d 545, 550-551 [1958]). Of course, "this Court has never 'adopt[ed] any rigid method of analysis which would, except in unusual circumstances, require us to interpret provisions of the State Constitution in "[l]ockstep" with the Supreme Court's interpretations of similarly worded provisions of the Federal Constitution' " (People v Pavone, 26 NY3d 629, 639 [2015], quoting People v Scott, 79 NY2d 474, 490 [1992]). While we have recognized that the State Constitution may provide greater rights than those provided by the Federal Constitution, this is not one of those instances in which, after "analyz[ing] the particular case and the Federal constitutional rule at issue," it can be said that "established New York law and traditions [mandate that] some greater degree of protection must be given" (Scott, 79 NY2d at 491; see People v P.J. Video, 68 NY2d 296, 302-303 [1986]).
Rather, our jurisprudence has consistently relied on U.S. Supreme Court decisions in the context of due process protections for defendants seeking appellate review and we have paralleled federal precedent in providing similar procedural safeguards for a meaningful appellate process (compare Griffin, 351 US at 19, with Pride, 3 NY2d at 550-551 [acknowledging Griffin as providing a constitutional basis in addition to our public policy grounds for holding a meaningful first-tier appeal requires providing defendant with a trial record]; compare Anders v California, 386 US 738, 744 [1967], with Emmett, 25 NY2d at 356 [meaningful first-tier appeal requires an opportunity for a defendant to file a brief]).
In New York, a defendant in a non-death penalty criminal case has no constitutional right to an appeal to this Court (NY Const, art VI, § 3). Our jurisdiction in non-capital criminal appeals is expressly limited by our constitution and the legislature's statutory directive to the review of questions of law (see NY Const, art VI, § 3 [a], [b]; CPL 470.05). The legislature has only provided for a statutory right to seek permission for such an appeal at the second-tier level (see CPL 460.10). Indeed, the jurisdiction and purpose of the Court of Appeals mirrors that of the U.S. Supreme Court in this regard:
"[T]he basic premise underlying our appellate court system is that the intermediate appellate tribunals—particularly the Appellate Divisions—will dispose with finality of the great majority of the appeals,{**32 NY3d at 315} leaving for further review by the State's tribunal of last resort, the Court of Appeals, only a relatively small number of selected cases worthy of such further review. The primary function of the Court of Appeals, like that of the United States Supreme Court in the Federal sphere, is conceived to be that of declaring and developing an authoritative body of decisional law for the guidance of the lower courts, the bar and the public" (Arthur Karger, Powers of the New York Court of Appeals § 1:1 at 3-4 [3d ed rev 2005]).
While the dissent attempts to differentiate between the structure of appellate review of other states examined in Evitts and Ross (see dissenting op at 
325-328), it eschews the defining features of the review process essential to the finding of no constitutional due process entitlement to the discretionary appeal and the representation of counsel thereon: this Court is a second-tier reviewer of questions of law on established factual records of the trial court and does not sit "to correct errors in individual cases, but to decide matters of larger public import" (Halbert, 545 US at 618).
As in the federal courts, a criminal defendant's "absolute right" and "basic entitlement" to appellate consideration of a direct first-tier appeal does not translate to a similar constitutional entitlement to a discretionary, second-tier appeal in this state (see Ross, 417 US at 610; People v Ventura, 17 NY3d 675, 679-682 [2011]). The CLA process is predicated on the presentation of issues argued and briefed in the trial court and the intermediate appellate court; the first-tier appellate record and briefs are readily available to both this Court and a pro se defendant for a CLA. Consequently, representation by counsel in the CLA process is not mandated by due process for a meaningful review of the CLA.
IV.
Against this backdrop, we reject defendant's attempt to abrogate the statutory time limit of CPL 460.30 for second-tier appeals. It is the legislature that sets this Court's jurisdiction, including the time limitations for seeking leave to appeal (see Matter of Santangello v People, 38 NY2d 536, 539 [1976] ["any arguments for a change in (appellate) practice, however persuasive, must be addressed to the legislature"] [internal quotation marks and citations omitted]). In this regard, "coram {**32 NY3d at 316}nobis relief is not just another stop on a continuum of opportunities for a defendant to seek appellate relief" (Rosario, 26 NY3d at 602-603) and is not a substitute for the legislative remedy provided in CPL 460.30 for an untimely CLA. "We may not resort to interpretative contrivances to broaden the scope and application of unambiguous statutes to create a right to appeal out of thin air in order to fill the . . . void, without trespassing on the Legislature's domain and undermining the structure of article 450 of the CPL" (Matter of 381 Search Warrants Directed to Facebook, Inc. [New York County Dist. Attorney's Off.], 29 NY3d 231, 251-252 [2017] [internal quotation marks and citations omitted]; see People v Stevens, 91 NY2d 270, 279 [1998]; People v Laing, 79 NY2d 166, 170-172 [1992]). Contrary to defendant's argument, there are no state constitutional grounds to ignore the legislatively imposed time limitation—applicable to all defendants represented or not, rich or poor—to the remedy provided for improper attorney conduct in failing to file a timely CLA. Indeed, defendant is unable to cite any authority for his assertion that the State Constitution requires a right to representation by counsel to file a CLA for permission to take a second-tier appeal.
Defendant invokes the term "due process" while simply ignoring that our precedent hews closely to the path of the Fourteenth Amendment as justification for due process guarantees, as well as equal protection measures, for meaningful appellate review (see e.g. Syville, 15 NY3d at 397-398; Bachert, 69 NY2d at 596; Montgomery, 24 NY2d at 132; Pride, 3 NY2d at 550).[FN6] And his citation to case law involving the ineffective assistance{**32 NY3d at 317} of trial counsel—in [*7]which there is no dispute that the constitutional right to counsel has attached under article I, § 6 in the trial court; the Sixth Amendment; or both—fails to support his claim (see People v Baldi, 54 NY2d 137, 147 [1981]; People v Caban, 5 NY3d 143, 156 [2005]).
The dissent, in comparison, mistakenly equates the attachment of our state's constitutional right to counsel—which is unique in that it prohibits the defendant's waiver of counsel in the absence of counsel even before an accusatory instrument is filed (see People v Settles, 46 NY2d 154, 162-163 [1978]; Bing, 76 NY2d at 339 [the constitutional right to counsel is applicable in "two well-defined situations": (1) "waivers after formal proceedings have commenced" and (2) police may not question uncharged individuals in custody who have retained or requested an attorney in the absence of counsel])—with the entirely separate claim that the right to representation on the first-tier appeal extends to a CLA seeking permission for a second-tier appeal (see dissenting op at 
330) and is a right presumably constitutional in nature at that juncture. The dissent's hodgepodge references to case law on this state's right to counsel reveals a failure to examine the specific context explaining why and when the constitutional right to counsel attaches during interrogation and upon commencement of the criminal action (see People v Claudio, 83 NY2d 76, 80-81 [1993]). We created the "indelible right, a right that defendant could not waive in the absence of counsel, to justify suppression of the voluntary statement" made by a defendant represented on the charge on which he was held in custody; the rule is that defendant could not be interrogated in the absence of counsel on any matter, whether related or unrelated to the subject of the representation (see Bing, 76 NY2d at 350). Our case law recognizing the importance of the constitutional right to counsel as a buffer between the defendant and the coercive actions of the State at the pre-conviction stage, particularly as a necessary protection against self-incrimination, is addressed to concerns that are not implicated in a second-tier appeal.
Similarly, our case law interpreting the right to counsel at a postjudgment proceeding depends on whether it is a " 'critical stage' of the prosecution, where counsels' absence might prejudice due process rights"; the determinative factor is whether, in an adversarial fact-finding hearing, the liberty of defendant rested on the arbiter's de novo factual determinations (Garcia, 92 NY2d at 730-731, citingPeople ex rel. Donohoe v Montanye,{**32 NY3d at 318} 35 NY2d 221, 226 [1974]; [*8]People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376, 381-382 [1971]). In sharp contrast, on a second-tier appeal, the facts for the appeal are confined to the trial court record, the legal issues have been fully briefed, and the appeal is "not an accusatory proceeding affording defendant an opportunity to explain charges against him or requiring the court to make [de novo] factual or legal determinations affecting his liberty" (Garcia, 92 NY2d at 731; People v Colwell, 65 NY2d 883, 885 [1985] [rejecting the requested extension of the Rogers rule (People v Rogers, 48 NY2d 167 [1979]) to situations in which "the defendant already stands convicted and is represented only on an appeal from the conviction"]). As in Andrews and Arjune, neither defendant nor the dissent can "cite any legal support for the imposition" of a state constitutional right to representation on a CLA for a second-tier appellate review (Arjune, 30 NY3d at 354; see Andrews, 23 NY3d at 616). We note that the lack of citations for support or authority is particularly striking in light of the magnitude of judicially declaring a constitutional right to counsel on every CLA filed or not, whether years ago or years from now.
In order to enhance the appellate review for both the Court and the defendant, this Court may assign counsel once a leave application is granted (see 22 NYCRR 500.20 [e]) and the Appellate Division rules require counsel in the first-tier appeal to assist in filing a CLA (see 22 NYCRR 606.5 [b] [2] [1st Dept]; 22 NYCRR 671.4 [a] [1] [2d Dept]; 22 NYCRR 821.2 [b] [3d Dept]; 22 NYCRR 1015.7 [4th Dept]). But those court rules do not create a constitutional entitlement to counsel during the CLA process, or a claim of a constitutional deprivation of due process when counsel's performance is deficient at that stage of appellate review (see Arjune, 30 NY3d at 355 n 7, citing Roe, 528 US at 479). As we have made clear, and as the dissent fails to comprehend (see dissenting op at 
321-322), rules of professional conduct " 'cannot be applied as if they were controlling statutory [authority] or decisional law' " and not "every violation of an ethical rule will constitute ineffective assistance of counsel" (People v Berroa, 99 NY2d 134, 140 [2002], quoting S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 443 [1987]; see Claudio, 83 NY2d at 83 [counsel's deficient performance during interrogation at the preaccusatory stage does not implicate the state's guarantee of effective assistance of counsel to a suspect]).{**32 NY3d at 319}
Needless to say, although one may desire to have an attorney in any particular proceeding on innumerable matters, a desired circumstance alone does not create a constitutional right to the assistance of counsel (see People v Letterio, 16 NY2d 307, 312 [1965]). In this case, assuming defendant's counsel's failure to file a CLA violated his ethical obligations under the relevant practice rules of the Appellate Division, that misconduct does not automatically transform the representation in the CLA process into one derived from the constitution and a corresponding ineffective assistance of counsel claim (see Chalk v Kuhlmann, 311 F3d 525, 528-529 [2d Cir 2002]). Try as the dissent might, "[c]ases on appeal barriers . . . 'cannot be resolved by resort to easy slogans or pigeonhole analysis' " (see Halbert, 545 US at 610, quoting M.L.B. v S.L.J., 519 US 102, 120 [1996]).
We turn now to defendant's concern that his inability to exhaust all available avenues for state appellate review may have negative consequences on his ability to seek federal habeas relief. Federal habeas courts are "guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism" (Martinez v Ryan, 566 US 1, 9 [2012]). Moreover, a federal court may invoke a miscarriage of justice exception to the general rule of procedural default "to see that federal constitutional errors do not result in the incarceration of innocent persons" (McQuiggin v Perkins, 569 US 383, 392 [2013] [quotation marks and citation omitted]). In any event, federal court rules governing whether a petitioner exhausted state remedies or failed to adhere to state procedures are not an invitation for this Court to abandon our own independent state procedural law of reasonable time limitations, which is jurisdictional in nature. Nor is it a reason to artificially manufacture layers of constitutional rights that otherwise have no textual origin.
Given our history paralleling our jurisprudence with that of the federal courts in affording defendants meaningful review on appeals, and without any reason to deviate from that tradition today, we hold that there is no state constitutional right to legal representation on an application for leave to appeal to this Court.
Accordingly, the order of the Appellate Division should be affirmed.

Wilson, J. (dissenting). This case is not about whether criminal {**32 NY3d at 320}defendants should have counsel to seek our review—they do, and Mr. Grimes did. Nor is this case about whether criminal defendants have a right to petition us to grant leave—they do, and Mr. Grimes did. The majority holds that Mr. Grimes, whose lawyer promised and failed to seek this Court's review of his criminal conviction, has no right that his state-provided counsel be effective when seeking leave from our Court, and therefore must lose his right to ask for our review. I believe the majority has veered sharply off course, and therefore dissent.
The sleight of hand appears at the start, where the majority states that in People v Andrews (23 NY3d 605 [2014]), we held that counsel's failure to file a criminal leave application (CLA) within the time limits in CPL 460.30 "does not deprive a defendant of a constitutional right to the effective assistance of counsel or due process under the Sixth and Fourteenth Amendments of the United States Constitution," which it then links to what it claims is the question presented here: "whether a more protective rule should be recognized under the New York State Constitution" (majority op at 
304). The question to which the majority's opinion is addressed is whether, as a matter of due process, New York has a constitutional obligation to provide counsel to indigent defendants who wish to file CLAs. The question here, though, is not at all that. It is much simpler: when New York has provided counsel to represent a defendant in preparing a CLA, does the defendant have a constitutional right that counsel meet established standards of effectiveness?
We have repeatedly and emphatically stated that the right to counsel provided by the New York Constitution is older, broader and more powerful than that provided by the United States Constitution. "So valued is the right to counsel in this State, it has developed independent of its Federal counterpart. Thus, we have extended the protections afforded by our State Constitution beyond those of the Federal—well before certain Federal rights were recognized" (People v Settles, 46 NY2d 154, 161 [1978] [Cooke, J., writing for a unanimous Court] [citations omitted]). The majority's decision disserves the rights of all New Yorkers and diminishes the role of this Court in ensuring justice. The majority's rationale would satisfy neither a constitutional scholar nor—more importantly—the lay citizens to whom the right to counsel belongs. I discuss those in reverse order.{**32 NY3d at 321}
I.
The Appellate Division affirmed Mr. Grimes' conviction. Mr. Grimes' counsel assured him in writing that he would prepare and file a CLA requesting review by our Court. Counsel prepared the CLA. Unbeknownst to Mr. Grimes, his counsel mistakenly never filed it. Mr. Grimes served his sentence and was released the day before Thanksgiving. Shortly after New Year's Day, Mr. Grimes asked his lawyer the status of his application. His lawyer then—one month after the grace period in CPL 460.30 had expired—discovered his error.
People v Syville holds an attorney's failure to timely file an appeal for an intermediate appeal when requested violates the defendant's right to counsel, entitling the defendant to a writ of error coram nobis if the time allotted in CPL 460.30 has already run (15 NY3d 391 [2010]). Our long-standing precedent establishes that the counsel's failure to keep a promise to seek further review, permitted by statute, of a criminal conviction, indisputably constitutes [*9]ineffective assistance (see People v Montgomery, 24 NY2d 130, 132 [1969]; People v Callaway, 24 NY2d 127, 128-129 [1969] ["a defendant is entitled to a coram nobis hearing when his petition alleges, in effect, that he was prevented from exercising his right to appeal from the judgment of conviction by an assurance from the lawyer, who had been assigned to represent him upon a trial, that an appeal would be taken on his behalf"]). What is evident from the majority's lengthy discussion of writs of error coram nobis (majority op at 
306-309) is that, as we held in cases from People v Hill (8 NY2d 935 [1960]) to People v Montgomery to People v Syville, a writ of error coram nobis is available to vindicate the constitutional rights of a defendant, regardless of any conflicting terms of a statute purporting to govern the jurisdiction of the courts.
As the majority recognizes, Mr. Grimes' counsel was required to file the CLA upon request (majority op at 
317). Before the adoption of the uniform rules of the Appellate Divisions, each Division's rules required appellate counsel to discuss CLAs with the defendant and to file one if requested (22 NYCRR 606.5 [b] [1] [1st Dept]; 22 NYCRR 671.4 [a] [1] [2d Dept]; 22 NYCRR 821.2 [b] [3d Dept]; 22 NYCRR 1022.11 [b] [4th Dept] [all hereinafter 22 NYCRR 606.5]). Our own website advises the public: "The Rules of this Court and the Appellate Division require counsel assigned or retained at the intermediate appellate court to file an application for leave to appeal if the defendant requests" (New York Court of Appeals, Frequently {**32 NY3d at 322}Asked Questions—Applications Seeking Permission to Appeal to the Court of Appeals, https://www.nycourts.gov/ctapps/clafaq.htm [last accessed Sept. 27, 2018], cached at 
http://www.nycourts.gov/reporter/webdocs/PermissiontoAppeal.pdf).[FN1]
Thus, Mr. Grimes' attorney at the Appellate Division remained his counsel for filing the CLA; he had an uninterrupted attorney-client relationship, mandated by state law. Indeed, because of 22 NYCRR 606.5, it should surprise no one that virtually all criminal defendants who petition this Court for leave are represented by counsel: for the first six months of 2018, we received 1106 criminal leave applications on direct appeals. Of those, 1089 (98.5%) were prepared by counsel.[FN2] So, {**32 NY3d at 323}this case is not about whether New York should provide counsel to indigent defendants wishing to petition the Court of Appeals for review; we always do. Instead, this case is about whether, having chosen to do so, the State Constitution requires counsel to meet minimal standards of effectiveness. The majority's answer is unfathomable to the average citizen: In the trial courts and first-line appeal courts, you have the constitutional right to effective counsel. The State requires your appellate counsel to continue to represent you when you petition the Court of Appeals. But when your lawyer is petitioning the State's highest court, ineffective assistance of counsel is just fine.
Whatever might be said about whether New York has a constitutional obligation to provide counsel for those who wish to seek our review, New York has provided it—which is wholly laudable, not just as to criminal defendants, but as to the State's efforts to provide legal representation to indigent persons in civil cases broadly (22 NYCRR 51.1 [creating the Permanent Commission on Access to Justice]); Family Court (Family Ct Act § 262); and Housing Court (NY City Civ Ct Act § 110 [o]). As the majority notes, states have no constitutional obligation to provide any appellate review of criminal convictions, but once they do so by statute, the Due Process Clauses of both the New York and United States Constitutions require the provision of counsel (see majority op at 
310, 311 citing Douglas v California, 372 US 353, 356-357 [1963], Griffin v Illinois, 351 US 12, 18 [1956], People v Montgomery, 24 NY2d 130, 132-133 [1969] and Hamilton v Alabama, 368 US 52 [1961]). The majority agrees that CPL 460.30 does not bar coram nobis relief to vindicate that right. Likewise, New York did not have to permit defendants to petition the Court of Appeals for review,[FN3] but having provided that statutory right and the statutory right to counsel [*10]to effectuate it, the constitution requires counsel to be effective. Additionally, we have held that, as a matter of state constitutional law, appellate counsel{**32 NY3d at 324} must be held to the same standard of effectiveness as trial counsel (People v Stultz, 2 NY3d 277, 279 [2004]).
The majority's analysis, therefore, cannot logically turn on the fact that review is discretionary, because this case does not concern the right to counsel once review is granted, but the right to file a CLA, which is no less established than the right to obtain review by the Appellate Division. Daunting is the prospect of explaining to the citizens of New York why the only time we tolerate ineffective lawyers is when they are petitioning the highest court to hear issues of "significant public interest" or to decide "legal principles of major significance" (majority op at 
313). The answer the majority would have us give to the public appears to be that we do not need the parties' lawyers to assist us in determining when to grant leave. I, for one, do. I suspect the same is true for others. Many of us have a practice of holding a conference with counsel before deciding a CLA that may have merit, which I understand to be a long-standing practice of the Court. I also believe that, as a general matter, we do not hold such conferences when the litigant is pro se. Additionally, the fact that we require lawyers to prepare CLAs when requested suggests an institutional determination that lawyers add value to the CLA process.
II.
I doubt a constitutional scholar would find today's decision satisfying, either. For starters, the majority has boarded the wrong boat. The question of whether due process requires the provision of counsel to represent defendants filing CLAs is not raised here. That right is guaranteed by 22 NYCRR 606.5, rendering the question of any constitutional entitlement not before us. The question before us is whether, having granted a statutory right to file a CLA and a statutory right to counsel for that specific purpose, that counsel should be held to our governing state constitutional standard for effectiveness. Whatever the Federal Constitution might say about whether states are compelled to provide counsel for applications for discretionary appeals within their own court system or on certiorari petitions to the United States Supreme Court, nothing in federal law suggests that the effectiveness of counsel should be judged differently when counsel's representation concerns a right to petition for review rather than a nondiscretionary right to appeal. Although the majority complains that Mr. Grimes has cited no law for the proposition that New York's Constitution{**32 NY3d at 325} "requires a right to representation by counsel to file a CLA for permission to take a second-tier appeal" (majority op at 
316), that is not relevant. New York could choose not to provide counsel for CLA applications, could choose not to provide for CLA applications at all, or could choose not to provide for appeals at all—the New York Constitution requires none of those. The proposition for which there is no legal support is the majority's conception that appellate counsel, once engaged, may be ineffective. To the contrary, we have clearly established that appellate counsel is held to the same constitutional standard of effectiveness as trial counsel (Stultz, 2 NY3d 277, 279).
The analysis coursing throughout the majority's opinion does not concern the constitutional right to counsel. Instead, it promotes the proposition that because the Federal Constitution's Due Process Clause would not entitle someone in Mr. Grimes' position to the appointment of counsel, and because New York often follows the federal courts' interpretation of that clause when interpreting the State's due process protections, Mr. Grimes' due process claim fails (see majority op at 
305 ["Due Process Clause of the United States Constitution"], 309 ["no federal constitutional right to counsel under the Due Process Clause"], 
310 ["elementary due process"], 312 ["a violation of the Fourteenth Amendment"], 
314 ["our jurisprudence has consistently relied on U.S. Supreme Court decisions in the context of due process protections"], 
315 ["no constitutional due process entitlement"], 316 ["our precedent hews closely to the path of the Fourteenth Amendment"]). This leads the majority to recoil in horror at "the magnitude of judicially declaring a constitutional right to counsel on every CLA filed or not, whether years ago or years from now" (majority op at 
318). This case is not about whether the due process clause of any constitution requires New York to [*11]appoint counsel to defendants wishing to pursue CLAs. It is solely about whether, when we have already appointed counsel "on every CLA filed or not," the State Constitution requires that counsel to be effective. Why is that scary, or even big? Is not the majority's fear ironic, in view of the current efforts to provide counsel to civil litigants, litigants in Family Court, Housing Court and elsewhere?
A.
The federal law referenced by the majority is off point and does not advance its position. The majority relies on Ross v Moffitt (417 US 600 [1974]) and Evitts v Lucey (469 US 387{**32 NY3d at 326} [1985]), but neither bears on the question raised here. In Ross, the United States Supreme Court held that the United States Constitution did not compel North Carolina to provide counsel to indigent defendants for discretionary appeals to either the North Carolina Supreme Court or when petitioning the United States Supreme Court for a writ of certiorari. For several reasons, Ross does not support the majority's position.
First, North Carolina lacks New York's broad interpretation of the right to counsel under its State Constitution. Second, also unlike New York, North Carolina did not statutorily provide counsel to indigent defendants seeking to petition its Supreme Court for review; that is, whereas Mr. Grimes was represented by counsel who was required to file a CLA on his behalf, Mr. Moffitt had no attorney, and was not statutorily entitled to one. Ross, therefore, says nothing about whether a defendant represented by counsel (here, counsel provided by the State) for the purpose of filing a petition for review by a state's highest court has a right that such counsel perform in a manner consistent with settled law as to effectiveness. Third, unlike the New York Court of Appeals, the Supreme Court of North Carolina is able to review lower court decisions sua sponte (NC Const, art IV, § 12; NC Gen Stat Ann § 7A-31; see Ross at 613). Thus, the right to petition for review in North Carolina is less integral to the North Carolina judicial system than it is in New York—the more integral a procedure is to the system, the more likely federal law would apply the Due Process Clause to incorporate the right to counsel (Griffin v Illinois, 351 US 12, 18 [1956]; see majority op at 
311). Fourth, the Supreme Court was careful to state that it was not "in any way discourag[ing] those States which have, as a matter of legislative choice, made counsel available to convicted defendants at all stages of judicial review," which is exactly what New York has done (Ross at 618).
Nothing in Ross suggests that when a state makes the legislative choice to provide counsel, that counsel is not held to constitutional standards of effectiveness. Thus, Ross bears on whether the Federal Constitution compels states to provide counsel, not on whether a state constitution should be interpreted to require that counsel perform competently when a state has chosen to provide a statutory right to counsel for a statutory right to petition for review. Finally, Ross's discussion of the right to counsel when petitioning the United States Supreme Court for certiorari is irrelevant here. As the Supreme{**32 NY3d at 327} Court noted, the "right to seek certiorari in this Court is not granted by any State, and exists by virtue of federal statute with or without the consent of the State whose judgment is sought to be reviewed" (Ross at 617). Therefore, "[t]he suggestion that a State is responsible for providing counsel to one petitioning this Court simply because it initiated the prosecution which led to the judgment sought to be reviewed is unsupported by either reason or authority" (Ross at 617). Just as North Carolina chose not to provide counsel to defendants wishing to petition its Supreme Court, Congress has not chosen to provide counsel to defendants wishing to seek a writ of certiorari. New York has made a different choice. However much our "jurisdiction and purpose . . . mirrors that of the U.S. Supreme Court" (majority op at 
314), we starkly differ in the only way pertinent to this case.
The majority also misreads Evitts. The question before the Supreme Court was, where a criminal defendant has a right to counsel, "whether the Due Process Clause of the Fourteenth Amendment guarantees the criminal defendant the effective assistance of counsel on such an appeal" (Evitts v Lucey, 469 US 387, 389 [1985]). Evitts' holding supports the conclusion that counsel must be held to a constitutional standard of effectiveness: "nominal representation on an appeal as of right—like nominal representation at trial—does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all" (469 US 387, 396). Evitts does not support the majority's assertion that "a second-tier appeal . . . does not require, as a matter of constitutional law, the assignment of counsel for a meaningful appeal" (majority op at 
312). The portion of Evitts cited for that proposition says, instead, that Kentucky's argument that its first-tier appeal is discretionary is incorrect. Nowhere does Evitts say that if an appeal is discretionary, the Federal Constitution does not require the appointment of counsel [*12]to those seeking leave. Instead, it strongly suggests that when a state has chosen to provide counsel to those seeking leave, the Constitution requires counsel to be competent.
Likewise, the majority's further quotations from Evitts (majority op at 
311-312) emphasize the importance of effective assistance of appellate counsel, without making any distinction between an appeal as of right and a petition for review by a state's highest court (which issue was not remotely present in{**32 NY3d at 328} Evitts). Indeed, Evitts supports Mr. Grimes' argument that New York's decision to provide him counsel to prepare and file his CLA means that such counsel must act in a professionally reasonable manner. Evitts pointedly relied on Goldberg v Kelly (397 US 254, 262 [1970]) for the proposition that once the government chooses to provide a benefit, due process attaches to the provision of those benefits (Evitts, 469 US 387, 410). We have said the same (see People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376, 384 [1971] [" 'when a state undertakes to institute proceedings for the disposition of those accused of crime it must do so consistently with constitutional privileges, even though the actual institution of the procedure was not constitutionally required' "], quoting Hewett v State of North Carolina, 415 F2d 1316, 1323 [4th Cir 1969], and citing Goldberg v Kelly, 397 US 254, 262-263 [1970]).
B.
The majority's conclusion that "this is not one of those instances in which . . . it can be said that 'established New York law and traditions [mandate that] some greater degree of protection must be given' " (majority op at 
314) is addressed to the question of whether New York's Constitution requires the provision of counsel to prepare CLAs. Again, that is not the question here. New York has provided counsel for that purpose. No New York authority suggests that appellate counsel may be ineffective, nor does any federal authority suggest so.
The most mystifying feature of the majority's analysis is that, in attempting to draw in irrelevant federal due process jurisprudence, it omits any discussion of the interpretive standards by which we determine whether to extend a constitutional right (here, the right that counsel be effective) more broadly than the federal courts have interpreted it, though it cites some of those cases incorrectly and for a completely different purpose.
Examine the following passage from the majority:
"That well-reasoned federal analysis is pertinent to our interpretation of the corresponding State Due Process Clause in the context of an application to the highest court in the state for leave to grant a second-tier review as '[t]he Supreme Court's analysis . . . [is] consonant with New York State law and interest[ ]' (People v Alvarez, 70 NY2d 375, 379{**32 NY3d at 329} [1987]; see People v Kohl, 72 NY2d 191, 197 [1988]; People v Pitts, 6 NY2d 288, 291-292 [1959]; People v Pride, 3 NY2d 545, 550-551 [1958])" (majority op at 
 313-314).
Alvarez has nothing to do with the right to counsel; it is a case in which we decided to follow the federal constitutional rule that the failure of police to take a breath sample from a drunk driver did not violate the driver's due process rights under the New York Constitution. We did not reach that conclusion by blindly following the federal rule; we expressly relied on an analysis that compels rejection of the majority's position here:
"We recognize that regardless of whether there exists a Federal constitutional provision parallel to a State provision, we must undertake a 'noninterpretive' analysis, proceeding from 'a judicial perception of sound policy, justice and fundamental fairness' (id., at 303). Under this analysis relevant considerations include whether the right at issue has historically been afforded greater protection in New York than is presently required under the Federal Constitution, whether the right is 'of peculiar State or local concern,' or whether the State citizenry has 'distinctive attitudes' toward the right" (Alvarez at 378-379).
The other cases in the majority's string cite have nothing to do with the right to counsel, and some of them repeat the proposition that we diverge from the federal courts' interpretations, even when textual language is identical, if the right in question has historically been offered greater protection in New York or is of peculiar local concern, which is more true of the right to counsel than any other (see People v Kohl, 72 NY2d 191, 197 [1988] ["we [*13]look further to see whether there are fundamental justice and fairness concerns of this State which are left unaddressed under prevailing Federal law and which are therefore warranted under the independent broader State protection"]; People v Pride, 3 NY2d 545, 549-550 [1958] ["Our State has always regarded the right to appellate review in criminal matters an integral part of our judicial system and treated it as such. Since long before the Supreme Court's pronouncement (Griffin v. Illinois, 351 U. S. 12), it has been the consistent policy of our courts to preserve and promote that right as an effective, if imperfect, safeguard against impropriety or error in the trial of causes"]).
{**32 NY3d at 330}There is no need to determine whether we should extend the constitutional right that counsel be effective any more broadly than the equivalent federal right, because there is no suggestion that the federal courts countenance ineffective assistance of counsel. Putting that aside, we have repeatedly stated, over many years and in many contexts, that
"[t]he safeguards guaranteed by this State's Right to Counsel Clause are unique. By constitutional and statutory interpretation, we have established a protective body of law in this area resting on concerns of due process, self-incrimination and the right to counsel provisions of the State Constitution which is substantially greater than that recognized by other State jurisdictions and 'far more expansive than the Federal counterpart' " (People v Harris, 77 NY2d 434, 439 [1991] [citation omitted]; see also People v Baldi, 54 NY2d 137, 147 [1981]; People v Caban, 5 NY3d 143, 155 [2005]).
How, in the face of our long-standing and unyielding commitment to protection of the constitutional right to counsel, do we conclude that a defendant should suffer from counsel's malpractice—which would constitute constitutional ineffective assistance of counsel in any lower court—simply because the malpractice affected a defendant's right in this Court instead?
C.
I come, then, to the linchpins of the majority's analysis: the New York Constitution tolerates deficient counsel for CLA applications because: (1) " 'a correct adjudication of guilt' in every individual case" is not a "critical issue" for the Court of Appeals (majority op at 
313); (2) indigent defendants do not need effective counsel for CLAs because they have "the benefit . . . of a prepared or original record of the trial court proceedings, briefs by both counsel on the merits of the errors that allegedly occurred at trial, and the written opinion of the intermediate appellate court determining the validity of the conviction" (majority op at 
312); and (3) unlike the lower courts, the Court of Appeals is concerned with matters of "significant public interest . . . legal principles of major significance to the jurisprudence of the State . . . [or] probable conflict with a decision of the Supreme Court" (majority op at 
313). Those arguments are not even compatible with each other, and provide no basis to conclude that New York's Constitution should excuse malpractice in CLAs.{**32 NY3d at 331}
To begin, even if the Court of Appeals does not think that correct adjudication (i.e., justice for the defendant or fairness to the People) is important in deciding whether to grant review, the pertinent question is not whether the Court of Appeals has a right to counsel to aid it in selecting cases, but whether the defendant, when petitioning the Court through counsel, has a right that counsel meet our well-established standards for minimal effectiveness. The right to petition for review rests on the most fundamental assumption of the adversary system: that litigants vigorously pursuing their own, adverse interests will best illuminate the correct decision in a case and the development of the rule of law with it (Strickland v Washington, 466 US 668, 685 [1984] ["The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled"] [citations and internal quotation marks omitted]; Sanchez-Llamas v Oregon, 548 US 331, 357 [2006] ["In an inquisitorial system, the failure to raise a legal error can in part be attributed to the magistrate, and thus to the state itself. In our system, however, the responsibility for failing to raise an issue generally rests with the parties themselves"]).
Next, if we thought the briefs in the intermediate court were sufficient to determine when we should grant review, why would we bother entertaining petitions from litigants? If, as the majority implies, a lay defendant without even a high school education can convert intermediate appellate briefs into a cogent CLA, we can readily [*14]determine leaveworthiness from those same Appellate Division briefs. To the contrary, the petitions substantially assist us in determining whether to grant leave; to conclude otherwise is to render our certiorari factors an invitation for busywork: "[E]xperience has demonstrated that there are just not enough hours in the day to permit judges of busy appellate courts, no matter how conscientious and willing, to examine and read the records before them as carefully or as critically as single-minded counsel for the appellant" (People v Breslin, 4 NY2d 73, 81-82 [1958]).
The majority is correct that our determination to grant leave involves factors that differ from those with which the Appellate Division is concerned (majority op at 
313). The majority is also correct that we require CLAs to include the parties' briefs, the order below, and relevant opinions or memoranda of the courts{**32 NY3d at 332} below, and other record items to be relied upon (majority op at 
312-313 n 5, citing 22 NYCRR 500.20 [b] [1]), and that "assessment of the leaveworthiness of a CLA depends" on those items. From that, the majority concludes that counsel is unimportant to our determinations of CLAs. That our review of CLAs "depends" on such basic materials hardly means that other information is unimportant.[FN4] To the contrary, our practice guide advises litigants and counsel that the following factors are important in our decision to grant leave in a criminal case:
"(1) Whether the law is well settled
"(a) Discuss whether this is a case of first impression; and
"(b) Mention whether there is a split in the Appellate Division Departments.
"(2) Significance and novelty of issue
"(a) Note whether the case involves a recent United States Supreme Court decision and, if so, how it should be interpreted in New York. Also, mention whether the case involves the construction of new state statutory provisions.
"(b) Explain why this case may otherwise present an issue of statewide importance.
"(3) Case specific factors
"The Court will consider how well the case is presented by the attorneys, both in terms of quality of arguments and focus on key issues" (New York State Court of Appeals Criminal Leave Application Practice Outline at 11, https://www.nycourts.gov/ctapps/forms/claoutline.pdf [last accessed on Sept. 27, 2018], cached at 
 http://www.nycourts.gov/reporter/webdocs/CrimLvPracticeOutline.pdf).
The majority acknowledges that these factors animate our decisions on CLAs.
For good reason, briefs in the lower courts typically do not address most of these factors: they are irrelevant to those courts. Although counsel might incidentally address some of{**32 NY3d at 333} these in the lower courts, counsel would have no reason to discuss a split among the Appellate Divisions if there was controlling law from the relevant Appellate Division; would have no reason to emphasize the significance or novelty of the issue(s); and would have no reason to claim that the issue was of statewide importance. Indeed, because counsel's objective is to obtain a favorable judgment for the client, minimizing the importance or novelty of the issue may be in the client's best interest in the lower courts.
[*15]
Moreover, there are cases in which the error first presents itself in the intermediate appellate court's decision, so that the briefs in that court do not address the error at all (see e.g. People v Bleakley, 69 NY2d 490 [1987]). In short, what the majority terms the "markedly different" role of our Court when compared to that of the lower courts is precisely why the arguments made by counsel in the lower courts are not sufficiently informative for defendants to rely on as a substitute for effective counsel when preparing a CLA. The majority's belief that the trial and intermediate courts are "governed by intricate rules that to a layperson would be hopelessly forbidding" (majority op at 
311-312) is equally true for us. Ask a lower court judge, or try Karger for bedtime reading.
D.
I do agree wholeheartedly with the sentiment that "[c]ases on appeal barriers . . . 'cannot be resolved by resort to easy slogans or pigeonhole analysis' " (majority op at 
319, quoting Halbert v Michigan, 545 US at 610). That is why, in Halbert, the Supreme Court rejected Michigan's argument that, for defendants who pleaded guilty or nolo contendere, appeals to its intermediate court were only by permission, so no right to counsel attached—refusing to accept the pigeonhole of "discretionary" to strip away the right to counsel. That is why, here, when New York has chosen to provide counsel for the express purpose of filing CLAs; when we have held that appellate counsel's failure to file a document necessary to effectuate a client's wish to seek further review is a per se violation of the right to effective counsel; and when we have no defensible basis to conclude that a defendant may lose the right to petition us no matter the egregiousness of his counsel's conduct, no resort to slogans or pigeonhole analysis is necessary.
The balance of the majority's observations is just that—observations, not arguments. Yes, the Constitution requires {**32 NY3d at 334}indigent criminal defendants to have a copy of the trial record and the chance to submit a brief, but the existence of those constitutional rights does not limit any other constitutional rights, nor does it negate the fact that Mr. Grimes had counsel. Yes, we have said that exceptions to section 460.30 are "rare," but, as we observed, they are rare because attorneys usually comply with their obligations to timely file papers (see Syville, 15 NY3d at 400 n 2). Yes, plenty of violations of the ethical rules for lawyers do not implicate a constitutional right of a client (e.g., lawyers should not commingle client funds, lawyers should treat each other with dignity and respect, lawyers advocating legislative change should state the capacity in which they are appearing). Yes, we accept only a small fraction of cases for review, but slim odds are not a reason to deny an indigent defendant the right to effective counsel once the State has required appellate counsel to prepare a CLA. But no, none of these observations explains why the Constitution permits ineffective assistance of counsel when petitioning our Court.
Finally, the majority erects two bogeymen to ward away Mr. Grimes' claim that he should not be penalized for his counsel's failure to file the promised CLA. One warns us that such a rule will expand to every form of post-conviction relief, swamping the system. But no state statute or rule requires attorneys to represent defendants in post-conviction matters, and, in contrast to CLAs, a substantial fraction of the post-conviction motions we receive are pro se applications. The line can easily be drawn at direct appeals, and it would be impossible to believe that requiring the existing CLA attorneys to meet constitutional effectiveness standards will swamp anything.
Bogeyman two cries out, "[i]t is the legislature that sets this Court's jurisdiction, including the time limitations for seeking leave to appeal" (majority op at 
315). Were that always so, Syville could not have been decided as it was. In Syville we expressly "recognize[d] the need for a second exception" to CPL 460.30:
"Where an attorney has failed to comply with a timely request for the filing of a notice of appeal and the defendant alleges that the omission could not reasonably have been discovered within the one-year time period, the time limit imposed in CPL 460.30 should not categorically bar an appellate court from considering that defendant's application{**32 NY3d at 335} to pursue an untimely appeal. Turning to the procedure to be used in invoking the exception, we conclude that the common-law writ of error cram nobis affords the appropriate avenue for relief. Since the adoption of the CPL, we have acknowledged that the writ continues to be available to alleviate a constitutional wrong when a defendant has no other procedural recourse" (15 NY3d at 399-400).
Here, as in Syville, the attorney failed to comply with the client's timely request; in Syville we set aside CPL 460.30's one-year time limit to protect the defendant's constitutional right to effective assistance of counsel.
[*16]
As a practical matter, our application of the exception we created in Syville demonstrates both that the exception will not swallow the statute, and that Mr. Grimes' situation is quite different from the circumstances in which defendants have been denied use of the exception. In People v Perez (23 NY3d 89, 101 [2014]), we denied coram nobis relief to all three defendants based on "[t]wo compelling facts [that] stand out in all three cases: the delays were extremely long, and the defendants did not have a good excuse for them." Two defendants did not complain about counsel's failure to file an appeal until after they had served their sentences, were tried for new crimes, and were sentenced as predicate offenders many years later. As to the third, Mr. Perez, we wrote that his claim "is more colorable than [the others'] because Perez had a lawyer—one who was undoubtedly ineffective in failing to perfect the appeal that he was hired to pursue. We have held that a client who was victimized by his appellate lawyer's procedural errors has been deprived of his constitutional right to the effective assistance of counsel" (id. at 100). We have thus made a quite sensible distinction, as to the strength of a claim of exemption from CPL 460.30's time limits, between someone who does not have a lawyer at all (weaker case) and someone who has a lawyer who, as here, was ineffective (stronger case). We denied Mr. Perez coram nobis relief because the "long delay in Perez's appeal—from the notice of appeal in 1996 to the motion for an extension of time in 2012—cannot be attributed solely to [counsel's] ineffectiveness" (id.). Here, the delay was not 16 years, as in Perez; it was not even 16 months.
In People v Andrews (23 NY3d 605, 615 [2014]), we held that Mr. Patel, who had unsuccessfully attempted the CPL 460.30{**32 NY3d at 336} procedure, did not get a second bite at the apple through coram nobis; and Mr. Andrews, who "demonstrated a desire not to seek appellate review" and whose lawyer confirmed that, was not entitled to coram nobis relief. In People v Rosario (26 NY3d 597, 603-604 [2015]), we denied coram nobis relief to both defendants because "[s]ignificantly, neither defendant claims that he requested that his attorney file a notice of appeal and that his attorney failed to comply with that request . . . [and] years passed before they sought coram nobis relief." It would be impossible to conclude that the Syville exception has invalidated CPL 460.30; we know how to be chary with exceptions.
III.
Stripped bare, the majority opinion says that because the United States Supreme Court decided in Evitts that the Fourteenth Amendment did not require North Carolina to appoint counsel for appeals to its Supreme Court or when seeking certiorari from the United States Supreme Court, New York counsel representing defendants seeking our review need not comply with the modest, established constitutional standards for effectiveness. That is anathema to our precedents concerning the effectiveness of counsel, our centuries-old conviction that the right to counsel matters more in New York than elsewhere, and to common sense. Even if our Court is concerned more with "matters of larger public import" than "errors in individual cases" (majority op at 
315), "the assistance of counsel is essential not only to insure the rights of the individual defendant but for the protection and well-being of society as well" (People v Settles, 46 NY2d at 161). It is also just plain weird to say that we require appointed counsel to prepare CLA applications but refuse to hold counsel to minimal standards of professional conduct, leaving defendants (and this Court) to suffer the consequences.
Judges Stein, Fahey, Garcia and Feinman concur; Judge Wilson dissents in an opinion, in which Judge Rivera concurs.
Order affirmed.

Footnotes

Footnote 1:Although Montgomery "clearly" announced the use of coram nobis to remedy the failure to obtain a first-tier appellate review of the judgment, courts had endorsed the procedure in the years prior to that decision (see Hairston, 10 NY2d at 94; People v Hill, 8 NY2d 935 [1960]).

Footnote 2:We note that the venue for bringing a CPL 460.30 motion for an extension of time to file a CLA is in this Court, but there is no authority for filing a motion for coram nobis in the Court of Appeals (see People v Gibbs, 85 NY2d 1030, 1030 [1995]; People v Bond, 93 NY2d 896, 896 [1999]). However, as in Andrews, the parties do not raise whether a coram nobis motion may be brought in the Appellate Division for the relief requested herein (see 23 NY3d at 616 n 3).

Footnote 3:Although defendant's arguments are based on the right to the effective assistance of counsel under the New York Constitution because of the statute providing for a CLA process, the dissent insists that representation on a first-tier appeal demands compliance with court rule standards and thus entitles defendant to the effective assistance of counsel in the CLA process (dissenting op at 
321-323). In so doing, the dissent conflates statutory rights with court rules and then clothes the representation in constitutional garments, without sourcing the right to counsel in the constitution itself. This Court has expressly rejected that position, as "[t]he right to effective assistance of counsel can be no broader than the right to counsel on which it is based" (People v Claudio, 59 NY2d 556, 561 n 3 [1983]). As we explained herein, court rules do not translate to statutory rules with constitutional entitlements. But in any event, the dissent's theory of the case is not one that has been endorsed by the parties and fails to address the issue actually before us: whether a defendant has a state constitutional right to be represented by counsel in filing a CLA. As to the dissent's reference to Claudio v Scully (982 F2d 798 [2d Cir 1992]), again, the right to counsel discussion is viewed out of context. The Second Circuit conditionally granted the defendant's habeas corpus petition based on his lawyer's ineffectiveness under the Sixth Amendment for the failure to make a state constitutional right to counsel argument before the New York Court of Appeals in an interlocutory appeal (not a CLA) on a pretrial suppression ruling. The state constitutional grounds for suppression of the confession—evidence which was essential to the case—had been addressed by the intermediate appellate court (85 AD2d 245 [2d Dept 1982]). In conditionally granting the petition, the Second Circuit, again relying on the Sixth Amendment, expressly distinguished the defendant's "pre-trial appeal"—a "critical stage"—from "post-conviction discretionary appeals," to which the Sixth Amendment right to counsel did "not . . . extend" (982 F2d at 802). Obviously, the Second Circuit did not alter the controlling law upon which we rely (including Ross). The dissent also omits that we subsequently and unanimously rejected that state constitutional right to counsel argument (see People v Claudio, 83 NY2d 76 [1993]), and the judgment denying the habeas petition was reinstated (see Claudio v Scully, 841 F Supp 85 [ED NY 1994]).

Footnote 4:New York Constitution, article I, § 6 provides: "In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him or her" (NY Const, art I, § 6 [emphasis added]).

Footnote 5:Contrary to the dissent's assertions, a Judge of this Court's assessment of the leaveworthiness of a CLA depends on the underlying record of the trial court, the briefs submitted in the intermediate appellate court, and the lower courts' decisions (see dissenting op at 
331). To facilitate the proper review of a CLA, our rules require that
"[a]n application for leave to appeal from an intermediate appellate court order determining an appeal taken to that court shall include: (i) one copy of each brief submitted on defendant's behalf to the intermediate appellate court; (ii) one copy of each brief submitted by the People to the intermediate appellate court; (iii) the order and decision of the intermediate appellate court sought to be appealed from; [and] (iv) all relevant opinions or memoranda of the courts below, along with any other papers to be relied on in furtherance of the application" (22 NYCRR 500.20 [b] [1] [emphasis added]).
With these essential materials providing an ample foundation, the CLA may be but a brief letter summarizing what was already argued in the courts below. The representation by counsel is not a fundamental prerequisite to a fair hearing under these circumstances. Indeed, the pro se CLA is not a rarity in this Court as pro se litigants regularly seek permission to appeal an adverse determination by the intermediate appellate court on motions for writs of error coram nobis pursuant to Bachert (see 69 NY2d at 599-600; CPL 450.90). Of note, the dissent's reference to statistics is limited to CLAs from direct appeals from conviction (see dissenting op at 
322).
Footnote 6:While we have recognized that the State Constitution may provide greater rights than those provided by the Federal Constitution, that is not always the case (see e.g. Herring v New York, 422 US 853 [1975]; Abrams v McCray, 478 US 1001 [1986]). Indeed, in analyzing the Fourteenth Amendment's Equal Protection Clause, we have found that the state constitutional provision "is no more broad in coverage than its Federal prototype" (see Dorsey v Stuyvesant Town Corp., 299 NY 512, 530 [1949]; see also Matter of Esler v Walters, 56 NY2d 306, 313-314 [1982]). In this regard, the federal constitutional right to counsel for a meaningful review on a first-tier appeal is premised on both the due process and equal protection bases of the Fourteenth Amendment, whereby "[t]he equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs" (Halbert, 545 US at 610-611 [internal quotation marks omitted]). Defendant cannot advance an equal protection argument under our State Constitution as our precedent is clear we mirror the federal counterpart. Thus, defendant is left to rely solely on due process grounds, essentially claiming a CLA for a second-tier appeal without representation by an attorney is fundamentally unfair, a theory which we now reject.

Footnote 1:The majority quibbles with my characterization of 22 NYCRR 606.5 as providing a statutory right to counsel, claiming that I have conflated statutory rights with court rules (majority op at 
309 n 3). Our rules providing counsel and requiring the preparation of CLAs are promulgated pursuant to Judiciary Law § 35. As with all statutorily authorized regulations and rules, they have the force of law (unless unconstitutional or in excess of the statutory grant of authority—which are inconceivable here) (Matter of Allstate Ins. Co. v Rivera, 12 NY3d 602, 608 [2009] ["A duly promulgated regulation that meets these criteria has the force of law"], quoting Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d 196, 201 [2007]). The notion that a valid rule or regulation has less legal effect than a statute is a novel proposition that would shatter administrative law. People v Claudio (59 NY2d 556 [1983]), which the majority cites, concerns the lack of a right to counsel under the United States Constitution before the initiation of formal proceedings, which is far from the case here. Most curiously, the majority neglects to mention Mr. Claudio's subsequent history. The United States Court of Appeals for the Second Circuit granted his habeas corpus petition on the ground that his lawyer's ineffectiveness in failing to file a leave application to the New York Court of Appeals violated his federal right to counsel. In so holding, the Second Circuit observed: (1) "Claudio's pre-trial appeal to the [New York] Court of Appeals was unquestionably a critical stage"; (2) "The New York Court of Appeals has consistently interpreted the right to counsel under the New York Constitution more broadly than the Supreme Court has interpreted the federal right to counsel"; "Thus, we find that there was a reasonable probability that an Article 1, § 6 claim would have succeeded before the Court of Appeals"; and (3) "[Claudio's New York appellate counsel's] failure to raise the state constitutional claim fell 'outside the wide range of professionally competent assistance.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. No reasonably competent attorney should have missed the Article 1, § 6 claim, even though the Appellate Division ultimately rejected it." (Claudio v Scully, 982 F2d 798, 802-803, 805 [2d Cir 1992]).

Footnote 2:I am not sure what to make of the majority's assertion that "the pro se CLA is not a rarity in this Court" (majority op at 
313 n 5); the data I report above is from the Office of Court Administration via our Clerk's Office, so I can only assume that the majority means that 17 of 1106 is "not a rarity." It is true that those statistics are "limited to CLAs from direct appeals from conviction" (id.), which is precisely the correct yardstick. The State has charged appellate counsel with a duty to prepare CLAs; the question here is whether counsel must be effective for that purpose. Whether many or few inmates prepare pro se habeas petitions has no bearing on the question here.

Footnote 3:For example, Appellate Division Justices regularly grant leave to this Court. Were that not enough to allow us to reach a sufficient number of leaveworthy issues, the legislature could have given the Court of Appeals authority to scour the Appellate Division decisions and pick those it deemed leaveworthy, but instead has granted criminal defendants the right to petition us.

Footnote 4:When one enters a restaurant with a "No Shirt, No Shoes, No Service" policy, one needs to do more than walk in wearing a shirt and shoes to dine. More is required, such as placing an order and paying your bill (and pants are probably a good idea, too).