STEIN, J.
*1208 ***349 In People v. Syville, 15 N.Y.3d 391, 912 N.Y.S.2d 477, 938 N.E.2d 910 (2010), we held that, in rare circumstances, a defendant may seek coram nobis relief ***350 despite failing to move for an extension **528 of time to file a notice of appeal within the one-year grace period provided by CPL 460.30. Specifically, we concluded that coram *1209 nobis may be available for a defendant who demonstrated that he or she timely requested that trial counsel file a notice of appeal, the attorney failed to comply, and the omission could not reasonably have been discovered within the one-year time limit (see id. at 400-401, 912 N.Y.S.2d 477, 938 N.E.2d 910 ). Defendant now asks us to expand Syville to situations in which retained trial counsel filed a timely notice of appeal but allegedly failed to advise the defendant of his or her right to poor person relief, or to take any action when served with a motion to dismiss the appeal years after the notice of appeal was filed. Because defendant has not met his burden of proving that counsel was ineffective, we decline to expand Syville under the circumstances presented here.
I.
Defendant, an English-speaking immigrant from Suriname, asserts that he is minimally literate and has cognitive limitations, which admittedly did not prevent him from maintaining employment in construction, managing independent living skills, taking his elderly mother to doctor appointments and ensuring that she took her medication, and helping his girlfriend's teenage child complete her homework. Defendant immigrated to the United States in 2006. In 2008, he was charged with attempted murder in the second degree, assault in the first degree, tampering with physical evidence, and possession of a weapon in the fourth degree. The charges arose out of an incident in which defendant used a boxcutter to stab another man in the chest, stomach and leg, and then hid the boxcutter-which was covered in blood-in a ceiling tile in the bathroom of the restaurant where the stabbing took place. Defendant retained counsel, who asserted a justification defense at the ensuing jury trial. Counsel was able to obtain defendant's acquittal on the attempted murder and first-degree assault charges. Defendant was convicted, however, of tampering with physical evidence and criminal possession of a weapon in the fourth degree. He was sentenced to an aggregate term of 1 to 3 years in prison.
At sentencing, the court clerk stated, "[l]et the record reflect the defendant is being handed a notice of appeal." The People ***351 have provided us with the standard "Notice of Defendant of His Right to Appeal" that is handed to all Queens County defendants.[1] Counsel filed a notice of appeal on defendant's behalf the day after sentencing.
Defendant was released from prison in March 2010, four months after being sentenced. He did not retain an attorney, move for poor person relief or attempt to obtain assistance in perfecting the appeal. In October 2013, approximately four years after the notice of appeal was filed, the People moved in the Appellate Division to dismiss the appeal as abandoned. As required by CPL 470.60, the People sent a copy of the motion to dismiss both to defendant at his last known residence and to counsel. Neither defendant nor counsel **529 responded, and the Appellate Division dismissed the appeal in December 2013.
One year later, in December 2014, defendant was remanded to the custody of Immigration and Customs Enforcement *1210 for deportation and was released on bond. Defendant's immigration attorney referred him to an appellate indigent defense provider, who moved to reinstate defendant's appeal in April 2015. Although the People filed a response taking no position on the motion, the Appellate Division denied it.[2] In October 2015, nearly six years after the notice of appeal was filed, defendant moved for a writ of error coram nobis, claiming that he was denied the effective assistance of counsel in perfecting his appeal.
In connection with his coram nobis application, defendant submitted an affidavit in which he stated, without proof, that counsel did not speak with him during or after his trial about an appeal, about the fact that his conviction could subject him to deportation, or about poor person relief. He averred that he did not know that a notice of appeal was filed and that he would have pursued the appeal if he knew about the deportation ***352 consequences of his conviction and his right to an attorney.[3] Trial counsel also submitted an affirmation in which he stated that he was retained to represent defendant at trial and filed a notice of appeal on defendant's behalf but, after he did so, he did not remember speaking to defendant about how to perfect the appeal. Counsel indicated that he believed his representation, as retained trial counsel, ended after the filing of the notice of appeal because "[i]t was understood that [he] was trial and not appellate counsel." Counsel also stated that he had no recollection of receiving the People's motion to dismiss the appeal.
The Appellate Division denied the coram nobis motion, without opinion ( 138 A.D.3d 877, 29 N.Y.S.3d 475 [2d Dept.2016] ), and a Judge of this Court granted defendant leave to appeal ( 27 N.Y.3d 1148, 39 N.Y.S.3d 383, 62 N.E.3d 123 [2016] ).
II.
Despite trial counsel's having secured an acquittal on the charges of attempted murder and first-degree assault, as well as a sentence that resulted in defendant being released from prison four months after his trial ended, defendant now claims that counsel was ineffective. Defendant argues that, due to his purported cognitive limitations, he was ill-equipped to obtain poor person relief in connection with the process of appealing his conviction, to oppose the dismissal of his appeal or to perfect it without any guidance from an attorney. Defendant and Judge Rivera, in dissent, cite the rules of all four Appellate Division Departments, which were in effect at the time of his conviction, requiring trial counsel to inform his or her client, in writing, of the right to appeal and provide basic information necessary to pursue the appeal, including the right to seek poor person relief and how to do so if the client is indigent (see 22 NYCRR 606.5 [b]; 671.3[a]; 821.2[a]; former 1022.11[a] ). Defendant and Judge Rivera, in dissent, maintain that the existence of such directives-as well as bar association standards mandating that counsel assist in procuring poor person relief and take steps to ensure that an appeal is not unwittingly **530 forfeited-establishes defendant's entitlement to a writ of error coram nobis based upon his unsupported claims that counsel failed to assist him in obtaining poor person relief or to respond ***353 to the People's motion to dismiss four years after the notice of appeal was filed. *1211 This argument is undermined by this Court's holdings, in two cases, that defendants are not "constitutionally entitled to appointment of counsel to assist in preparing a poor person application" ( People v. Perez, 23 N.Y.3d 89, 99, 989 N.Y.S.2d 418, 12 N.E.3d 416 [2014] ; see People v. West, 100 N.Y.2d 23, 28, 759 N.Y.S.2d 437, 789 N.E.2d 615 [2003], cert. denied 540 U.S. 1019, 124 S.Ct. 561, 157 L.Ed.2d 433 [2003] ). That is, we expressly rejected the argument that "an application for poor person relief is a critical stage of the proceeding to which [a defendant's] Sixth Amendment and due process rights to counsel attach" ( West, 100 N.Y.2d at 28, 759 N.Y.S.2d 437, 789 N.E.2d 615 ). Perez and West involved review of Appellate Division dismissals of appeals for failure to perfect. We explained that, while our "state's processes must provide the criminal appellant with the minimal safeguards necessary to make an adequate and effective appeal" ( West, 100 N.Y.2d at 28, 759 N.Y.S.2d 437, 789 N.E.2d 615 ), "it is not unconstitutional to require a defendant to take some minimal initiative to assure himself adequate representation on appeal" ( Perez, 23 N.Y.3d at 100, 989 N.Y.S.2d 418, 12 N.E.3d 416 ).[4] Notably, in both West and Perez, the Court concluded that written notices similar to the one provided to defendant at sentencing here "[c]learly ... informed [the defendants] of [their] right to appeal and more specifically, how to apply for poor person relief," and thus "belied" any claims that delays in perfecting their appeal should not be counted against them ( West, 100 N.Y.2d at 27, 759 N.Y.S.2d 437, 789 N.E.2d 615 ; see Perez, 23 N.Y.3d at 99, 989 N.Y.S.2d 418, 12 N.E.3d 416 ).
Given this legal backdrop-i.e., the Court's holdings in West and Perez that a defendant is not constitutionally entitled to the assistance of counsel in seeking poor person relief as long as he or she is given written notice that is similar to the one defendant received here-defendant has a heavy burden to demonstrate entitlement to a writ of error coram nobis premised on ineffective assistance of counsel for failing to assist in procuring poor person relief. Although the dissenters ***354 fail to recognize the distinction, we emphasize that defendant does not challenge the dismissal of his appeal by the Appellate Division for failure to perfect, as in Perez and West ; nor does this appeal involve the Appellate Division's resolution of a motion to extend the time to appeal under court rules (cf. People v. Zanghi, 159 A.D.2d 1030, 552 N.Y.S.2d 463 [1990] ). Rather, this appeal is from the denial of a coram nobis motion. Therefore, defendant bore the burden of demonstrating that he was denied meaningful assistance-that counsel's actions in allegedly failing to assist defendant in obtaining poor person relief were not "consistent with those of a reasonably competent ... attorney" ( **531 People v. Borrell, 12 N.Y.3d 365, 368, 881 N.Y.S.2d 637, 909 N.E.2d 559 [2009] ). He failed to meet that burden here, both in terms of his specific claim that counsel did not advise him of his right to seek poor person relief in connection with his appeal and the more general claim, advanced by both Judge Rivera and *1212 Judge Wilson in dissent, that counsel did not consult with him regarding an appeal.
With respect to the other prong of defendant's coram nobis motion (based on failure to respond to the dismissal motion four years after the notice of appeal was filed) defendant and Judge Rivera, in her dissent, essentially seek a rule that trial counsel has a constitutional responsibility in connection with an appeal for an indefinite period of time extending for years after the notice of appeal is filed. Neither defendant nor that dissent cite any legal support for the imposition of such a rule. Moreover, the cases that defendant cites concerning ineffectiveness of counsel and entitlement to coram nobis relief-including Syville -do not support imposing either such an open-ended obligation on behalf of trial counsel or a rule that counsel is ineffective for failing to assist a defendant in obtaining poor person relief.
III.
The federal rule on ineffectiveness of counsel when an attorney completely fails to file a notice of appeal was enunciated in Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).[5] In that case, the Supreme Court declined to hold that a trial attorney's performance was deficient per se for failing to file a notice of appeal whenever a client did not clearly instruct otherwise (see id. at 478, 120 S.Ct. 1029 ). The Court concluded that such a rule would "effectively ***355 impose[ ] an obligation on counsel in all cases either (1) to file a notice of appeal, or (2) to discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly" (id. ). The Court recognized that filing a notice of appeal is a "purely ministerial task that imposes no great burden on counsel" ( id. at 474, 120 S.Ct. 1029 ), and that counsel's failure to file a notice when asked to do so works a "forfeiture of a proceeding itself," depriving a defendant of "an appeal altogether" ( id. at 483, 120 S.Ct. 1029 ). Nevertheless, the Supreme Court rejected a per se rule because holding "as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient [,] ... would be inconsistent with both ... Strickland[6 ] and common sense" ( id. at 479, 120 S.Ct. 1029 ). The Court further explained that "detailed rules for counsel's conduct have no place in a Strickland inquiry"-i.e., in an ineffective assistance of counsel inquiry under the federal standard ( id. at 480, 120 S.Ct. 1029 [internal quotation marks and citation omitted] ).
Thus, the Supreme Court held that-although the better practice is to routinely consult with a client-an attorney has a constitutional obligation to consult with a client regarding taking an appeal only when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested **532 in appealing" ( id. at 480, 120 S.Ct. 1029 ). The Court expressly defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes" ( id. at 478, 120 S.Ct. 1029 ). That definition must be read in the context of the Court's hypothetical *1213 indicating that such consultation would not be required when "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult ... [because,] [i]n some cases, counsel might then reasonably decide that he need not repeat that information" ( id. at 479-480, 120 S.Ct. 1029 ).[7] The acknowledgment in Roe that the sentencing court may satisfy trial counsel's duty necessarily implies that ***356 the Court's definition of "consult" cannot logically be read to extend trial counsel's duty to consult with the defendant regarding the merits with a view toward deciding whether to perfect the appeal. Nor does Roe address whether such consultation is required when, as here, a notice of appeal was filed.
Syville itself-which relied on Roe -is an expansion of CPL 460.30, which "permits the Appellate Division to excuse a defendant's failure to file a timely notice of appeal from a criminal conviction if the application is made within one year of the date the notice was due" ( 15 N.Y.3d at 394, 912 N.Y.S.2d 477, 938 N.E.2d 910 ). This Court cited Roe for the propositions that: (1) "[w]hen defense counsel disregards a client's timely request to file a notice of appeal, the attorney acts in a manner that is professionally unreasonable" ( id. at 397, 912 N.Y.S.2d 477, 938 N.E.2d 910 [internal quotation marks and citation omitted] ); and (2) "to establish a constitutional violation in this context, a defendant need not identify potentially meritorious issues that would be raised on appeal; the defendant need only demonstrate that, as a result of counsel's deficient performance, appellate rights were extinguished" ( id. at 398, 912 N.Y.S.2d 477, 938 N.E.2d 910 ). Our narrow holding in Syville was that "the coram nobis procedure is available to afford further relief to defendants who did not move within the one-year grace period because they were unaware during that year that their attorneys had not complied with their requests to file notices of appeal" ( id. at 394, 912 N.Y.S.2d 477, 938 N.E.2d 910 ).
**533 ***357 Syville was grounded in the principle that "[t]he Due Process Clause prohibits a defendant from being denied the right to appeal as a consequence of the violation of another constitutional right-the right to the effective assistance of counsel on direct appeal" ( id. at 398, 912 N.Y.S.2d 477, 938 N.E.2d 910 ). Thus, we *1214 recognized that a limited exception to the one-year time limit imposed in CPL 460.30 was necessary when counsel failed to comply with a request to file a notice of appeal. We noted, however, that "it will be the rare case where this exception must be utilized," explaining that, "in most cases strict enforcement of the CPL 460.30 time limit is constitutionally permissible because attorneys usually accede to their clients' requests to file notices of appeal and, when they fail to do so, most defendants are in a position to discover the omission within the statutory grace period" ( id. at 400 n. 2, 912 N.Y.S.2d 477, 938 N.E.2d 910 [emphasis added] ).
Subsequently, in People v. Andrews, 23 N.Y.3d 605, 993 N.Y.S.2d 236, 17 N.E.3d 491 (2014), we reiterated that "the holding of Syville -that coram nobis may be used to assert a claim that appellate rights were extinguished by ineffective legal assistance-was a narrow one, " noting that "[o]nly defendants who 'could not reasonably have ... discovered' the omission during that period are entitled to utilize the coram nobis procedure" ( id. at 614, 993 N.Y.S.2d 236, 17 N.E.3d 491, quoting Syville, 15 N.Y.3d at 399, 400 n. 2, 912 N.Y.S.2d 477, 938 N.E.2d 910 [emphasis added] ). We further emphasized that the burden is on the defendant seeking coram nobis relief, stating that "Syville conditions coram nobis relief on a defendant's ability to demonstrate that appellate rights were lost as a result of ineffective assistance" ( Andrews, 23 N.Y.3d at 615, 993 N.Y.S.2d 236, 17 N.E.3d 491 ).[8] Thus, "perfunctory claims" that a defendant requested his or her lawyer file a notice of appeal or that the defendant was unable to discover counsel's failure to file a notice are insufficient, particularly where, as in the case currently before us, the sentencing "court's usual practice [was] to provide defendants with written notice of the right to appeal" ( id. at 615-616, 993 N.Y.S.2d 236, 17 N.E.3d 491 ).
Finally, in People v. Rosario, 26 N.Y.3d 597, 26 N.Y.S.3d 490, 46 N.E.3d 1043 (2015), the Court answered a question expressly left open in Syville, holding that "[i]n order to obtain exceptional relief beyond the time permitted ***358 under CPL 460.30, a defendant must show that he exercised due diligence" ( id. at 604, 26 N.Y.S.3d 490, 46 N.E.3d 1043 ). We noted in Rosario that the defendants (like defendant here)
"claim[ed] that counsel did not advise them of the right to appeal and had [they] known about their right to appeal, they would have requested one. However, in both appeals, the only evidence proffered in support of the contention that [the] defendants were not apprised of their appellate rights [was] self-serving affidavits" ( id. at 603, 26 N.Y.S.3d 490, 46 N.E.3d 1043 ).
Moreover, the Rosario defendants failed to "make any showing that they took steps toward discovering the omission or explain why years passed before they sought coram **534 nobis relief" ( id. at 604, 26 N.Y.S.3d 490, 46 N.E.3d 1043 ). In other words, Rosario establishes that it is not sufficient for purposes of showing due diligence for a defendant merely to make an unsupported claim that he or she never knew of the right to appeal; nor are the People required *1215 to rebut such unsubstantiated allegations.
The Court also determined in that case that the records, taken as a whole, demonstrated that the defendants were aware of their right to appeal, noting that "[b]oth the oral and written waivers in these cases are contrary to defendants' claims that they were unaware of their right to appeal" ( id. at 604, 26 N.Y.S.3d 490, 46 N.E.3d 1043 ). In so determining, the Court rejected the position of the dissenters in Rosario, who would have reversed on the ground that a defendant is entitled to coram nobis relief under Roe when the record does not demonstrate that counsel consulted with defendant about the appeal, including giving the attorney's "professional judgment on the merits of an appeal" ( id. at 605, 26 N.Y.S.3d 490, 46 N.E.3d 1043 ). Thus, the Rosario majority also implicitly rejected any notion that a defendant's unsupported affidavit is sufficient to establish entitlement to coram nobis relief whenever the record does not otherwise clearly demonstrate that trial counsel consulted with defendant on the merits of an appeal.
IV.
Here, apart from his affidavit stating that he did not recall receiving anything in writing about taking an appeal or discussing an appeal with counsel, defendant submitted no nonhearsay proof regarding whether he was made aware of his right to appeal or whether his attorney discussed the taking of an appeal with him prior to filing the notice of appeal. Indeed, defendant never even denied that the form handed to him at ***359 sentencing-while counsel presumably stood next to him-was the standard form handed to every defendant. He averred only that he did "not remember getting anything in writing about an appeal." Nor did defendant establish that he was unable to understand the form, including its instruction on how to obtain poor person relief, particularly given the fact that he was previously capable of retaining trial counsel.
Further, even if the receipt of the standard form was not sufficient under Perez and West , defendant failed to meet his burden of demonstrating that he was unaware of his appellate rights, how to seek poor person relief, or how to otherwise perfect the appeal, or that counsel failed to comply with the relevant court rules. Trial counsel's carefully worded affirmation does not support defendant's claims that he never discussed appealing, did not consult with defendant after sentencing, or failed to inform defendant that he would need either a different lawyer for an appeal or to apply for poor person relief; counsel's affirmation indicates merely that, "after filing the notice of appeal, " counsel had no contact with defendant or his family. The affirmation did not outline counsel's standard practice-presumably in an attempt to distinguish Andrews (see 23 N.Y.3d at 615, 993 N.Y.S.2d 236, 17 N.E.3d 491 ) and Rosario, 26 N.Y.3d at 604, 26 N.Y.S.3d 490, 46 N.E.3d 1043 -or address whether he consulted with defendant before filing the notice of appeal. Defendant has made no effort to present evidence of what conversations, if any, took place during this gap beyond a statement that, "[a]s far as [he] remember[ed], [counsel] did not talk to [him] about an appeal during or after [his] trial."
Defendant did submit an affirmation from his immigration attorney about his **535 lack of understanding of his right to appeal. However, that affirmation consists largely of hearsay, which parrots the claims asserted in defendant's own affidavit, and therefore also fails to satisfy defendant's burden on this coram nobis application. The affirmation of his current attorney-which recounts a conversation that she had with defendant's mother in *1216 which the mother allegedly stated that she and her husband paid defense counsel to represent defendant and that she did not remember defense counsel mentioning an appeal-similarly reflects a lack of firsthand knowledge of the relevant facts. Notably, while both of defendant's parents submitted their own sworn affidavits recounting defendant's background, neither parent was willing to swear that trial counsel failed to discuss an appeal with them or to inform them that he was not ***360 acting as appellate counsel. In any event, current counsel's claim is contradicted by defendant's own affidavit stating that he "paid [counsel] to represent [him] at [his] trial."
Thus, as in Rosario, we are asked to expand Syville to hold that a defendant is entitled to coram nobis relief based on an otherwise unsupported affidavit claiming that counsel did not consult with the defendant regarding an appeal and, had counsel done so, the defendant would have appealed. Indeed, although we rejected such an expansion of Syville in Rosario, we are now asked to go even further and hold that such unsubstantiated claims entitle a defendant to coram nobis relief, not only when a notice of appeal is not filed, but also when trial counsel files a notice of appeal, but allegedly fails to assist a defendant in applying for poor person relief-a stage of the proceedings in which we have held that counsel is not required to assist a defendant when he or she has received instructions on how to do so (see Perez, 23 N.Y.3d at 99, 989 N.Y.S.2d 418, 12 N.E.3d 416 ; West, 100 N.Y.2d at 28, 759 N.Y.S.2d 437, 789 N.E.2d 615 )-or to respond to a motion to dismiss years after filing a notice of appeal. Such a holding would represent a significant expansion of Syville, a case that, as we have repeatedly emphasized, recognized only a narrow exception to the one-year deadline imposed by CPL 460.30 for filing a notice of appeal that is, itself, to be used rarely.
Moreover, defendant has not shown that it was impossible to discover the alleged omission with reasonable diligence, even in spite of his alleged cognitive limitations. In Rosario, even where the defendants claimed that they were never aware of the right to appeal-as defendant claims here-they were nonetheless required to demonstrate what steps they took to discover the omission and explain why they waited years to obtain coram nobis relief (see Rosario, 26 N.Y.3d at 603-604, 26 N.Y.S.3d 490, 46 N.E.3d 1043 ). Here, defendant has not even attempted to make such a showing, apart from his unsupported claim that he was not aware of his right to appeal. In fact, the record suggests that the reason defendant waited years to pursue further relief was that he was not interested in appealing his conviction and relatively short sentence until his status as a convicted felon led to further consequences. That is, "[t]he facts permit an inference that th[is] defendant[ ] did not simply neglect [his] appellate rights, but consciously chose not to exercise them until [he] acquired a reason to do so" ( Perez, 23 N.Y.3d at 101, 989 N.Y.S.2d 418, 12 N.E.3d 416 ).
In light of the foregoing, we decline defendant's invitation to expand Syville and, instead, hold that coram nobis is unavailable ***361 under the circumstances presented here. Beyond some evidence of his cognitive limitations, defendant has provided only an unsupported affidavit indicating **536 merely that he was unaware of the right to appeal, and he has failed to show due diligence as required by Rosario. He has, therefore, failed to "demonstrate that appellate rights were lost as a result of ineffective assistance" ( Andrews, 23 N.Y.3d at 615, 993 N.Y.S.2d 236, 17 N.E.3d 491 ). Inasmuch as defendant's papers were insufficient on their face to meet his burden on this coram nobis application, the Appellate Division was within its authority to so *1217 hold. Accordingly, the order of the Appellate Division should be affirmed.

The form states:
"You have a right to appeal to the Appellate Division, Second Department, within thirty [30] days and, in addition, upon proof of your financial inability to retain counsel and to pay the cost and expenses of the appeal, you have the right to apply to the Appellate Division, Second Department, for the assignment of counsel and for leave to prosecute the appeal as a poor person and to dispense with printing.
"The Appellate Division, Second Department, is located at 45 Monroe Place, Brooklyn, New York 11201."

The Appellate Division's denials of defendant's motion to reinstate and his subsequent motion for reconsideration are not before us, and we have no occasion to consider the merits thereof.

Although he now claims, without direct evidentiary support, that his parents paid counsel to represent him at trial, defendant indicated in his affidavit that he retained counsel.

We reasoned that
"the concerns underlying a due process right to counsel on direct appeal are not present in the mechanism by which an indigent defendant seeks poor person relief. An appellant need only advise the appellate court of income, its source(s), and a list of property owned and its value. This personal information is uniquely available to the appellant-the assistance of counsel is not necessary to uncover or develop it. Consequently, the need for careful advocacy to ensure substantial legal and factual arguments are not passed over is not implicated" (People v. West, 100 N.Y.2d 23, 28-29, 759 N.Y.S.2d 437, 789 N.E.2d 615 [2003] ).

Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) is distinguishable because, here, counsel did file a notice of appeal. Nonetheless, Roe is instructive.

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

We note that Judge Rivera's conclusion that this statement in Roe, 528 U.S. at 479-480, 120 S.Ct. 1029 is misleading (Judge Rivera, dissenting op. at 370-371, 67 N.Y.S.3d at 542-43, 89 N.E.3d at 1223-24) is more properly directed at the United States Supreme Court. The same is true for the dissent's conclusion (Judge Rivera, dissenting op. at 368, 67 N.Y.S.3d at 541, 89 N.E.3d at 1221) that the Roe Court essentially contradicted Strickland when quoting it for the proposition that
" '[p]revailing norms of practice as reflected in American Bar Association standards and the like ... are only guides,' and imposing 'specific guidelines' on counsel is 'not appropriate.' And, while States are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented, we have held that the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices" (Roe, 528 U.S. at 479, 120 S.Ct. 1029 [citation omitted], quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052 ).
That said, nothing in this decision should be read to minimize the importance of these standards or state rules, to prohibit the adoption of such rules either administratively or by the legislature, or to contradict our prior decision that a writ of error coram nobis may lie when the violation of court rules results in a complete deprivation of counsel on a People's appeal (see People v. Brun, 15 N.Y.3d 875, 876-877, 912 N.Y.S.2d 532, 938 N.E.2d 965 [2010] ). Rather, we simply conclude that it cannot be said, "as a constitutional matter, that in every case counsel's failure to [comply with every aspect of such directives] is necessarily unreasonable, and therefore deficient" (Roe, 528 U.S. at 479, 120 S.Ct. 1029 ).

The fundamental flaw in both dissenters' reasoning is that they fail to recognize that defendant bore the burden here; they simply accept all facts alleged by defendant as true and afford him every possible favorable inference as if we were considering a motion to dismiss a civil complaint (see Leon v. Martinez, 84 N.Y.2d 83, 87, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994] ), as opposed to an application for a writ of error coram nobis (see People v. Andrews, 23 N.Y.3d 605, 615-616, 993 N.Y.S.2d 236, 17 N.E.3d 491 [2014] ).