RIVERA, J. (dissenting).
Our State Constitution guarantees every defendant effective assistance of counsel, which we have defined as "meaningful representation" ( People v. Benevento, 91 N.Y.2d 708, 712, 674 N.Y.S.2d 629, 697 N.E.2d 584 [1998] ; People v. Baldi, 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 [1981] ; see also People v. Stultz, 2 N.Y.3d 277, 284, 778 N.Y.S.2d 431, 810 N.E.2d 883 [2004] [extending the "meaningful representation" standard to appellate counsel] ). In the appellate context, "[a]ppellate advocacy is meaningful if *124 it reflects a competent grasp of the facts, the law and appellate procedure supported by appropriate authority and argument" ( Stultz, 2 N.Y.3d at 285, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). Defendant Omar Alvarez claims his appellate counsel's work failed to satisfy these criteria and seeks the opportunity to appeal his conviction and sentence **709 with the benefit of a lawyer who will timely perfect the appeal, discuss the issues with him in preparing the appellate arguments, and submit a brief that advocates for him based on the facts and law rather than leaving it to the judiciary to conjure the strongest arguments on his behalf. Based on the record of appellate counsel's substandard brief and failure to complywith ***295 his basic professional obligations to his client, a de novo appeal should be granted.[1]
The majority's acceptance in this case of appellate counsel's failures erodes our constitutional standard for effective assistance, imports a prejudice standard we have long rejected, and sends a message to the profession that there is seemingly little to no value attached to a lawyer's skill in advocacy. This could not be further from the truth. I dissent.
I.
As a threshold matter, the People's argument that defendant failed to act with due diligence in asserting his claim of ineffective assistance is unpreserved. As the People concede, they argued in the Appellate Division that defendant's request for coram nobis relief should be denied on laches grounds because his failure to file his coram nobis petition earlier prejudiced the People. They did not argue, as they do now, that defendant failed to exercise due diligence in pursuing relief. In fact, the People argued that the reasons for the timing of defendant's coram nobis petition were wholly irrelevant to the court's analysis because the petition must be dismissed on the sole basis of the alleged prejudice to the People's ability to oppose defendant's request.
The People attempt to avoid our preservation rules by arguing that laches and a statutory due diligence requirement are functionally equivalent grounds for disposition of defendant's petition. The People fail to address the significant, and ultimately dispositive, differences between the two. Laches originated as a doctrine in the courts of Chancery as a ground to refuse a claim in equity by a plaintiff who delayed bringing an action beyond the limitations period, even if opposing party suffered no prejudice (see e.g. Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 678, 134 S.Ct. 1962, 188 L.Ed.2d 979 [2014] ; Black's Law Dictionary 1006 [10th ed 2014] ). Laches remains an equitable doctrine but requires a showing of prejudice caused by a party's unreasonable delay in pursuing a right or claim. "The mere lapse of time, without a showing of prejudice, will not sustain a defense of laches" ( ***296 Saratoga County Chamber of Commerce v. Pataki, 100 N.Y.2d 801, 816, 766 N.Y.S.2d 654, 798 N.E.2d 1047 [2003], cert denied 540 U.S. 1017, 124 S.Ct. 570, 157 L.Ed.2d 430 [2003] ). Specifically, laches is an affirmative defense, deployed to estop a party from asserting a claim ( id. ). As its sine qua non is prejudice to the party against whom a claim is asserted, laches may be invoked regardless of whether the action is timely or not ( id. ). However, the doctrine is narrow in application and the United States *125 Supreme Court "has cautioned against invoking laches to bar legal relief" ( Petrella, 572 U.S. at 678, 134 S.Ct. 1962 ). In contrast, the People rely on CPL 460.30 (1), a statutory provision which extends the time to file a criminal leave application and expressly imposes a due diligence requirement on a defendant, tethered to a limitations period ( CPL 460.30 [1 ]; **710 People v. Syville, 15 N.Y.3d 391, 399, 912 N.Y.S.2d 477, 938 N.E.2d 910 [2010] ). In other words, by statute, the burden falls on the defendant to establish due diligence in bringing the claim within the time allotted (see People v. Rosario, 26 N.Y.3d 597, 603, 26 N.Y.S.3d 490, 46 N.E.3d 1043 [2015] ; People v. Arjune, 30 N., 67 N.Y.S.3d 526Y.3d 347, 357-358, 89 N.E.3d 1207 [2017], cert denied --- U.S. ----, 139 S. Ct. 67, 202 L.Ed.2d 46 [2018] ). A defense based on laches and a due diligence requirement are founded on disparate analytic foundations, each imposes different burdens of production and persuasion (see, e.g., Pecorino v. Vutec Corp., 6 F.Supp.3d 217, 221 [E.D.N.Y. 2013] ["Because laches is an affirmative defense, a defendant asserting laches bears the ultimate burden of persuasion, even where a presumption of laches may apply"] ). As such, and notably, the Appellate Division would not have applied due diligence principles to the People's claim that the doctrine of laches was an insurmountable bar to his request for coram nobis relief ( Lichtman v. Grossbard, 73 N.Y.2d 792, 794, 537 N.Y.S.2d 19, 533 N.E.2d 1048 [1988] [Court cannot grant relief on theory not argued below] ); Karger, Powers of the New York Court of Appeals, § 17:1 at 589-591 [3d ed rev 2005] ). Since the People's due diligence argument was not presented below, we may not consider it on this appeal (see Bingham v. New York City Tr. Auth., 99 N.Y.2d 355, 359, 756 N.Y.S.2d 129, 786 N.E.2d 28 [2003] ).
Even if preserved, the People's argument is without merit.[2] The People would have us extend the analysis of cases resolved under CPL 460.30 (1) and impose a statutory due diligence requirement to the writ of coram nobis. The Court has previously rejected the same claim, holding that a demand for coram nobis relief is to be considered on the merits as we do "not allow the lengthy passage of time, in itself, to bar review of a ***297 defendant's claims" ( People v. D'Alessandro, 13 N.Y.3d 216, 221, 889 N.Y.S.2d 536, 918 N.E.2d 126 [2009] ). With good reason, as the writ of coram nobis is not a creature of statute, subject to the limits set by the legislature, but rather "[a] common-law writ ... [that] continues to be available to alleviate a constitutional wrong when a defendant has no other procedural recourse" ( Syville, 15 N.Y.3d at 400, 912 N.Y.S.2d 477, 938 N.E.2d 910, citing People v. Bachert, 69 N.Y.2d 593, 516 N.Y.S.2d 623, 509 N.E.2d 318 [1987] ). That is the case here, as defendant has no other mechanism by which to present his claim that appellate counsel was ineffective.
II.
Turning to the merits, it is well established that a defendant has a right to effective assistance of counsel under both the federal and state constitutions (see Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 [1985] [defendant has federal right to appellate counsel on first appeal as of right] ). We have also long recognized that our state standard affords greater protection to defendants than the federal test for ineffectiveness ( People v. Caban, 5 N.Y.3d 143, 156, 800 N.Y.S.2d 70, 833 N.E.2d 213 [2005] ). Effective assistance *126 under our state constitution requires counsel provide the client with "meaningful representation" (see Benevento, 91 N.Y.2d at 712, 674 N.Y.S.2d 629, 697 N.E.2d 584 ; Baldi, 54 N.Y.2d at 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 ). "[T]he claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" ( **711 Benevento, 91 N.Y.2d at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584 ). This Court has stressed that "our legal system is concerned as much with the integrity of the judicial process as with the issue of guilt or innocence" ( id., quoting People v. Donovan, 13 N.Y.2d 148, 153-154, 243 N.Y.S.2d 841, 193 N.E.2d 628 [1963] ). "Thus, under our State Constitution, even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial" ( Caban, 5 N.Y.3d at 156, 800 N.Y.S.2d 70, 833 N.E.2d 213 ).
"In Stultz, we held that the 'meaningful representation' standard, announced in People v. Baldi in the context of evaluating the constitutional adequacy of trial representation, applies as well to claims of ineffective assistance of appellate counsel and that appellate counsel provides meaningful representation when [counsel] displays a competent grasp of the facts, the law and appellate procedure, supported by appropriate authority and argument" ( People v. Borrell, 12 N.Y.3d 365, 368, 881 N.Y.S.2d 637, 909 N.E.2d 559 [2009] [internal citations and quotation omitted] ).
***298 The Court recognized that "[i]n delineating what is meaningful, however, it would be unwise and possibly misleading to create a grid or carve in stone a standard by which to measure effectiveness" ( Stultz, 2 N.Y.3d at 285, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). In other words, our "meaningful representation" standard is not static, and takes into account differences between trial and appellate advocacy. Just as trial counsel must be judged holistically by the work attendant to preparing and conducting a defense at trial ( Baldi, 54 N.Y.2d at 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 ), appellate counsel must be judged according to the obligations and tasks of appellate practice, without consideration of whether the arguments presented would have resulted in a beneficial outcome for defendant ( Stultz, 2 N.Y.3d at 283, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). "The essential inquiry in assessing the constitutional adequacy of appellate representation is, then, not whether a better result might have been achieved, but whether, viewed objectively, counsel's actions are consistent with those of a reasonably competent appellate attorney" ( Borrell, 12 N.Y.3d at 368, 881 N.Y.S.2d 637, 909 N.E.2d 559, citing People v. Satterfield, 66 N.Y.2d 796, 799, 497 N.Y.S.2d 903, 488 N.E.2d 834 [1985] ).
More to the point, an appellate lawyer is measured by the ability to advocate persuasively, and forcefully, if not successfully, for the client. Advocacy is "the act of pleading for or actively supporting a cause or proposal" (Black's Law Dictionary 66 [10th ed 2014] ). A synonym of to advocate is to "champion" (Merriam-Webster Online Dictionary, advocate [https://www.merriam-webster.com/dictionary/advocate ] ). The right to counsel "means more than just having a person with a law degree nominally" representing defendant ( People v. Bennett, 29 N.Y.2d 462, 466, 329 N.Y.S.2d 801, 280 N.E.2d 637 [1972] ), and requires the effective assistance of counsel in "research of the law, and marshalling of arguments on [defendant's] behalf" ( Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 [1963] ). The culmination of that work for appellate counsel is the presentation of a cogent and organized appellate argument, presented in writing, *127 grounded on legal analysis and the facts of the case, and, when available, reaffirmed and further expounded orally before the court.
We have considered effectiveness of appellate counsel's overall performance in a small number of cases (see People v. Townsley, 20 N.Y.3d 294, 959 N.Y.S.2d 94, 982 N.E.2d 1227 [2012] ; Borrell, 12 N.Y.3d 365, 881 N.Y.S.2d 637, 909 N.E.2d 559 ;
**712 People v. Ramchair, 8 N.Y.3d 313, 832 N.Y.S.2d 889, 864 N.E.2d 1288 [2007] ; People v. Turner, 5 N.Y.3d 476, 806 N.Y.S.2d 154, 840 N.E.2d 123 [2005] ; Stultz, 2 N.Y.3d 277, 778 N.Y.S.2d 431, 810 N.E.2d 883 ; People v. Vasquez, 70 N.Y.2d 1, 516 N.Y.S.2d 921, 509 N.E.2d 934 [1987] ; People v. Gonzalez, 47 N.Y.2d 606, 419 N.Y.S.2d 913, 393 N.E.2d 987 [1979] ). Most of those cases focused on appellate counsel's choices, and specifically, the failure to raise a specific claim. In Gonzalez and Vasquez, the focus was ***299 on the manner in which counsel undermined their client by disparaging the client's claims; defendant's case is of a different kind. It goes to the essence of appellate advocacy - the ability to present a coherent argument intended to persuade through its rhetorical and analytical power. Here, we must consider whether merely presenting points of law without any reasoned advocacy effort is sufficient as a matter of law.
III.
Defendant filed this petition for coram nobis relief on the ground that his appellate counsel's performance, considered in its totality, deprived him of the effective assistance of counsel in his appeal. Defendant's claims are several and supported by the record.
First, defendant maintains that counsel was ineffective because he initially failed to perfect the appeal, causing the Appellate Division to place the matter on the court's Dismissal Calendar, thus risking the loss of defendant's only appeal as of right ( CPL 450.10 ; First Department Local Rule § 1250.10). The majority does not even address this failure.
Second, counsel failed to communicate at all with his client in the three years following his appointment to represent defendant, and only as a late-day response to the Dismissal Calendar notification. Even then, the correspondence was cursory - a mere two sentence letter stating, "Enclosed please find a copy of your transcript which has been separated from the transcript of your co-defendants'. I am presently preparing your appeal brief and it will be submitted as soon as it has been completed." The majority concludes that defendant's allegations are unsupported and thus fail to establish this lack of client contact (majority op. at 291, 101 N.Y.S.3d at 706-07, 125 N.E.3d at 121-22). I disagree and conclude that appellate counsel's on-the-record conduct supports defendant's claim.[3]
*128 ***300 Appellate counsel waited over three years to take any action on defendant's appeal, and only after prompted by the Appellate Division's notice of potential dismissal. Even still, counsel's letter to defendant was nothing more than an announcement of belated work. Its perfunctory content is telling in what it lacks. The letter does not reference prior correspondence or communication with defendant, so it cannot be viewed as a follow-up **713 to prior contact. It nowhere explains why counsel is sending defendant transcripts three years into his representation. The letter does not discuss the Appellate Division dismissal calendar notification, even though the court copied defendant on the letter and any reasonable attorney would expect the client to be curious or even concerned about a potential dismissal. Perhaps most revealing, counsel announces that he is working on the brief and will submit it when completed, without any suggestion of prior attorney-client discussions or the opportunity to discuss the contents of the brief, pre-filing. Of course, there is the additional matter of counsel's failure to file a request for leave to appeal to this Court when the Appellate Division affirmed his conviction.[4]
This track record is sufficient to support defendant's claims that counsel failed to communicate with defendant about the status of his appeal or otherwise engage with defendant about the issues counsel chose to raise in his brief. Counsel's failure to communicate with defendant is a basic violation of counsel's professional obligation to discuss the representation with his client, thus depriving defendant a voice in his appeal (see New York Rules of Professional Conduct - Rule 1.4 "Communication" [a lawyer shall "reasonably consult with the client about the means by which the client's objectives are to ***301 be accomplished" and "(a) lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation"] ).
Third, defendant complains of the poor quality of appellate counsel's advocacy. As the record establishes, counsel took an inexplicably long time to file the brief, over four years, delaying defendant's appeal. Once filed, the brief was, according to defendant, a "pathetic mockery of competent advocacy." There was no possibility any of the points raised could have persuaded the Appellate Division to reverse the conviction, and counsel's failure to raise an excessive sentence claim was inexplicable and inexcusable. Defendant submitted the brief in support of this claim.
The failings of the brief are substantial. Indeed, it is beyond understatement to declare, as the majority does here, that this "is not a model to be emulated" (majority op. at 292, 101 N.Y.S.3d at 707, 125 N.E.3d at 122). The brief fails to meet the basic criteria we have identified as fundamental *129 to meaningful appellate advocacy. It does not "reflect[ ] a competent grasp of the facts, the law and appellate procedure" ( Stultz, 2 N.Y.3d at 285, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). The brief is barely 20 double-spaced pages, including separate pages for the cover, tables of contents and cases, CPLR 5531 statement, and issues presented.[5] Inexplicably, at the **714 end of the facts section, appellate counsel inserted a photocopy of a six-page letter from trial counsel to the judge requesting an adjournment. The factual recitation consists of two pages and six lines of text. There is not a single citation in this section to the record on appeal, as required by the First Department's Local Rule § 120.8 (b)(4) which requires an appellant's brief to include a statement of facts "with appropriate citations to the ... record." This hardly seems adequate given defendant appealed from a judgment following a three-month joint trial with two co-defendants, resulting in a trial transcript spanning over 4,000 pages, and involving multiple serious counts, including murder. In contrast, the People submitted a brief over 175 pages long, with 60 pages solely devoted to the facts.
Appellate counsel's brief contained four argument points. Point one is titled: "Once the defendant is under police control ***302 was the search of the immediate area controlled by the defendant, illegal." The argument is just barely over three pages, with several single sentence paragraphs, and a vague reference to a "recent" case (but rather than cite or even name the case, appellate counsel appears to cite a three-year-old law journal article without a title). In contrast, the People responded with 15 pages of legal analysis, focused on both defendant's standing and the merits of his claim. Point two, titled "Did the Court's denial of an adjournment violate the defendant's 14th Amendment right of due proces [sic ]" is a page and a half long. The People's brief on this point was 11 pages in length, with a full discussion of the constitutional standard. Counsel's point three, titled "Did the Court's sealing of the witness list deny the defendant effect [sic ] assistance of counsel" is one paragraph long, a mere six sentences, and does not contain even a single citation to any legal authority.[6] The People responded with five pages of argument with over 11 legal citations. All of the People's points in response contain thorough and repeated citations to *130 the record. Point four, "The verdict is against the weight of the evidence" is a page and a half and, likewise, fails to contain a single citation to any legal authority. Not even to the standard of review. This is especially notable because, despite the point heading being labelled "weight of the evidence," counsel then argues there was not enough "legally sufficient" evidence. Legal sufficiency has a different, much more limited standard of review than weight of the evidence (see People v. Acosta, 80 N.Y.2d 665, 672, 593 N.Y.S.2d 978, 609 N.E.2d 518 [1993] [comparing ***303 People v. Steinberg, 79 N.Y.2d 673, 681-682, 584 N.Y.S.2d 770, 595 N.E.2d 845 [1992] **715 [legal sufficiency] and People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 [1987] [weight of the evidence] ).
The brief in no way illustrates appellate counsel's mastery of the factual record and the significant legal rules that supported these arguments ( Stultz, 2 N.Y.3d at 285, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). None of the points raised contain a citation to the facts or trial transcript; nowhere in the brief is the record ever cited. It appears counsel was not even certain of the standard as, for example, in support of his purported "weight of the evidence" argument, counsel invokes his personal opinion: "so I feel that the possibility of YTC setting Omar up to take the fall is very probable since they are the only ones to testify against him in the conspiracy."
The brief violates every rule about effective appellate advocacy taught to law students across the country. These rules are well-known and found in numerous academic and practice-oriented texts used in classrooms to assist future generations of lawyers in developing the skills recognized by the profession as essential to effective appellate lawyering: (see, e.g., Mary Beth Beazley, A Practical Guide to Appellate Advocacy [4th ed 2014]; Daniel P. Selmi, Principles of Appellate Advocacy, [1st ed 2013]; Ursula Bentele, Eve Cary & Mary R. Falk, Appellate Advocacy: Principles and Practice [5th ed 2012] ). One commentator summarized the skills necessary for appellate counsel as follows:
"First, counsel must be familiar with and follow the court's rules for protecting the defendant's right to appeal, such as the rules of procedure for filing the notice of appeal and any related statements and for ordering the transcript. Second, counsel must review the record for possible appellate issues. Third, counsel must determine what issues to raise in light of the facts, the law, the standard of review, and the scope of review. Fourth, counsel must decide how to formulate those issues. Fifth, counsel must find and use the most persuasive authority available. And sixth, counsel must write persuasively - including marshalling the facts, analyzing the law, and applying it to the facts" (Griffin, Lisa. The Right to Effective Assistance of Appellate Counsel, 97 W Va L Rev 1, 37 [1994] ).
Although not of the same significance, in addition to its substantive shortcomings, the brief is also riddled with grammatical and typographical errors. For example, counsel starts ***304 the brief by incorrectly identifying the parties on the cover - referring to the People as "Plaintiff-appellee," (which makes little sense in a criminal case) and referring to the defendant as both the "defendant-Appellant" and "Defendant Appellee." Point two refers in its heading to "Due Proces." The first sentence uses the contraction "it's" for the possessive. The same type of error is repeated later when the brief incorrectly refers to "defendants" in the plural rather than the singular possessive "defendant's," and uses the singular possessive "court's" *131 when the sentence clearly intends to refer to the plural "courts." The second sentence is barely coherent: "The court in this matter appeared in the denial of an adjournment to Omar to view the tapes and discuss them [sic ] with his counsel prior to starting trial as if starting trial on that day was more important than the defendant being properly prepared for trial." There is also this sentence: "The defendant had to proceed to trial without adequately preparing himself with the tapes that were an obstacle he had to traverse in his defense." Ironically, the point ends with appellate counsel's assertion that a defendant has a fundamental right to an adequately prepared counsel, and it is an abuse of discretion for the court to deny defendant the **716 opportunity to consult with counsel. If only appellate counsel had been so self-aware.
There is more. The heading for point three posits the question "did the Court's sealing of the witness list deny the defendant effect [sic ] assistance of counsel." The argument is one paragraph long and the penultimate sentence refers to "treats" instead of "threats"-not once but twice in the same sentence. The final sentence argues about the need for a hearing "before the witness list are sealed." The point four heading refers to the weight of the evidence but in the very first sentence states that "there is not enough legally sufficient evidence to sustain a conviction on the conspiracy count."
As this summary reveals, appellate counsel's brief fails to cite cases in support of the argument, lacks appropriate discussion of the facts, fails to comply with the filing rules of the Appellate Division, and violates basic rules of syntax and grammar. To the further detriment of defendant, this was the only advocacy on his behalf presented to the Appellate Division, as appellate counsel chose to submit the appeal and did not argue in person before that court.
The majority attempts to trivialize the deficiencies in this brief and suggests that I have focused on style rather than ***305 substance (majority op. at 293, 101 N.Y.S.3d at 707-08, 125 N.E.3d at 122-23). The majority's fixation on the grammatical and structural errors I describe elides critique of the fundamental problems with the writing. As is obvious from my analysis, my primary concern is with appellate counsel's failure to file a brief that "reflect[ed] a competent grasp of the facts, the law and appellate procedure supported by appropriate authority and argument" ( Stultz, 2 N.Y.3d at 285, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). That counsel could not even proofread his brief is further evidence that he failed to meet the minimum threshold for satisfactory appellate work. For all the majority's efforts to normalize these numerous deficiencies, the majority cannot make a silk purse out of this sow's ear.
Faced with an obviously inadequate writing, the majority clings to the view that the brief satisfies our standard of meaningful representation, as long as the brief "raised four reviewable issues that "triggered plenary review by the Appellate Division" (majority op. at 292, 101 N.Y.S.3d at 707, 125 N.E.3d at 122). However, it is not enough for appellate counsel to raise an issue; counsel must advocate in support of the issue and serve as defendant's champion. According to the majority all appellate counsel need do to provide meaningful representation is prepare a document populated with a list of issues, unsupported by facts and law, and then leave it to the judiciary to work through the record and the law to determine whether there is a meritorious claim hidden somewhere in this substandard brief. This is not advocacy but abdication of the *132 professional obligation to prepare a quality work product on behalf of the client.
Of course, the brief speaks for itself, and so for the reader's convenience, the brief is immediately available to view here: http://www.nycourts.gov/ctapps/reference/Alvarez%20Brief.pdf. [7] Practitioners, educators, and law students may assess whether this brief comports with our standard of effective legal assistance. To the organized bar, I ask: Is this an acceptable work product? Would any one of your members submit this on behalf of a client?
**717 As for defendant's claim that appellate counsel was ineffective because he failed to challenge the sentence as harsh and excessive, I agree that on the facts of this case, there appears ***306 to be no strategic reason to fail to assert this claim. While "[e]ffective appellate representation by no means requires counsel to brief or argue every issue that may have merit [and] appellate lawyers have latitude in deciding which points to advance and how to order them," there is no hard and fast rule and counsel's representation must be measured in light of the circumstances ( Stultz, 2 N.Y.3d at 285, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). I would not adopt a per se rule that every appellate counsel who fails to challenge the sentence as excessive is ineffective as a matter of law. However, here, defendant's sentence was 66 2/3 years to life. This effectively turns the minimum term of incarceration into a life sentence without the possibility of parole. Under these circumstances, there was no strategic advantage to be gained by failing to request the Appellate Division exercise its interest of justice power to consider whether defendant-who at the time of the crime was 19 years old-was potentially redeemable and should have the opportunity to persuade the Parole Board of such in the future. After all, if paroled, defendant would still serve a lengthy sentence and would walk out of prison an old man. Still, the possibility of parole would provide him hope of spending his last days free. As Judge Wilson persuasively argues in his dissent (Wilson, J., dissenting op. at 313-314, 101 N.Y.S.3d at 721-22, 125 N.E.3d at 137-38 ), defendant's conduct during his incarceration should remind us why we cannot simply write off young people who violate the law, even those who commit heinous crimes.
The majority's conclusion that appellate counsel was effective because there is no claim upon which defendant would have prevailed ignores that, under our state standard, prejudice to defendant is "not [an] indispensable element in assessing 'meaningful representation' " ( Stultz, 2 N.Y.3d at 284, 778 N.Y.S.2d 431, 810 N.E.2d 883 ; Benevento, 91 N.Y.2d at 712, 674 N.Y.S.2d 629, 697 N.E.2d 584 ; Baldi, 54 N.Y.2d at 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 ). The reason is because our standard does not solely protect against errors that may have adversely affected a defendant. If that were the case, we would have adopted the federal test which requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" ( Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 [1984] ). Instead, we have repeatedly eschewed the federal prejudice requirement because our constitution provides greater protection and is concerned with the integrity of the process overall (see, e.g., Borrell, 12 N.Y.3d at 368, 881 N.Y.S.2d 637, 909 N.E.2d 559 ; Turner, 5 N.Y.3d at 479-480, 806 N.Y.S.2d 154, 840 N.E.2d 123 ; Stultz, 2 N.Y.3d at 283, 778 N.Y.S.2d 431, 810 N.E.2d 883 ). Even if the *133 outcome would not have changed, if ***307 counsel for the defendant fails to provide constitutionally adequate representation, our justice system is weakened. Thus, we regard counsel as ineffective because "[o]ur focus is on the fairness of the proceedings as a whole" ( Stultz, 2 N.Y.3d at 284, 778 N.Y.S.2d 431, 810 N.E.2d 883 ).
IV.
For the reasons I have discussed, the majority has reduced our constitutional guarantee of meaningful representation for defendants to nothing more than a platitude, empty of any real substance. Previously, we lauded our state standard for legal representation as affording greater protection than the federal test ( Caban, 5 N.Y.3d at 156, 800 N.Y.S.2d 70, 833 N.E.2d 213 ). Now, the majority has adopted a **718 substandard threshold for professionalism. While public defenders, legal aid attorneys, other institutional providers of indigent defense services, the American Bar Association, and our State Bar Association promote guidelines and best practices for trial and appellate counsel, the majority has chosen to accept shoddy work product as the benchmark for meaningful representation. Defendants have a constitutional right to something better and our judiciary has the obligation to maintain the high quality of legal practice in New York by rejecting inferior work.
What other profession accepts a product riddled with errors? What client would put their liberty at risk with a brief that fails to present a cogent argument grounded in the facts and the law? The answer seems plain to me that no profession and no individual would be satisfied with the work at the center of this appeal.
Defendant has established that his appellate counsel failed to provide meaningful representation as required by our State Constitution. Defendant's coram nobis petition should be granted so that he may pursue a de novo appeal before the Appellate Division (see, e.g., Vasquez, 70 N.Y.2d at 4, 516 N.Y.S.2d 921, 509 N.E.2d 934 ).

Section 543 gave appellate courts the power to review cases in which an "erroneous judgment" had been entered "upon a lawful verdict, or finding of fact," to "correct the judgment to conform to the verdict or finding." The statute then went on to say that "in all other cases" the court must "either reverse or affirm the judgment or order appealed from or reduce the sentence imposed to a sentence not lighter than the minimum penalty provided by law." The broadly stated "in all other cases" was interpreted to include legal but excessive judgments, giving the Appellate Division the power to declare a sentence unduly harsh and modify it accordingly (see People v. Speiser, 277 N.Y. 342, 14 N.E.2d 380 [1938] ; People v. Rytel, 284 N.Y. 242, 30 N.E.2d 578 [1940] ; People v. Potskowski, 298 N.Y. 299, 83 N.E.2d 125 [1948] ; see also Gerhard O. W. Mueller, Penology on Appeal: Appellate Review of Legal but Excessive Sentences , 15 Vand. L. Rev. 671 [1962] ).

The Court of Appeals power in the Constitution has also been recodified, moving from Section 7 to Section 3 of Article VI.

The majority's dismissal of these precedents and research based on their recency (majority op. at 292-293 n. 4, 101 N.Y.S.3d at 707-08 n. 4, 125 N.E.3d at 121-22 n. 4) conflates two very different propositions. No research or Supreme Court decisions are necessary to conclude that an attorney with no viable merits-based arguments, representing a 19-year-old sentenced so that he will not be eligible for parole until age 87, is ineffective for failing to ask the Appellate Division to consider advancing the parole eligibility date. Such a request might resonate with more Appellate Division Justices now than it would have decades ago, but that is a very different question.
The most interesting feature of the majority's footnote, however, is that it necessarily endorses the proposition that, given the cited Supreme Court decisions and scientific research, an attorney's failure to seek a sentence reduction in the interest of justice where a young offender has been sentenced to a very long minimum would constitute ineffective assistance of counsel. Otherwise, pointing out the recency of the authorities is meaningless.

I adhere to the view that when, as here, appellate counsel fails to timely file a criminal leave application to this Court, the defendant has been denied effective assistance (see People v. Grimes, 32 N.Y.3d 302, 320-336, 91 N.Y.S.3d 315, 115 N.E.3d 587 [2018] [Wilson, J., dissenting]; People v. Andrews, 23 N.Y.3d 605, 617-619, 993 N.Y.S.2d 236, 17 N.E.3d 491 [2014] [Rivera, J., concurring in part and dissenting in part] ). Defendant does not seek review in this Court, which would be the relief for that failure, but rather an opportunity for a fair consideration of his appeal in the Appellate Division. Therefore, I address the question whether appellate counsel was ineffective in his representation of defendant before the Appellate Division, the one appellate review as of right provided under New York law (CPL 450.10 ; People v. West, 100 N.Y.2d 23, 759 N.Y.S.2d 437, 789 N.E.2d 615 [2003] ).

Previously, at least one member of this Court has indicated concern by a brief in a complicated case that was "only 37 pages long" (Borrell, 12 N.Y.3d at 371, 881 N.Y.S.2d 637, 909 N.E.2d 559, [Pigott, J., dissenting] [noting that counsel's performance in its totality was less than meaningful where "counsel's brief, which as noted by the majority was for two separate felony indictments and convictions, was only 37 pages long"] ).

The entire paragraph, exactly as it appears in the brief, errors and all, reads:
"The defendant was placed at a handicap because he was not aware who was going to testify against him for the records were sealed and the witnesses were not known until they testified. This interfered with the ability to cross exam a witness that you were not aware of until he took the stand. There was not an opportunity to discuss the witnesses with your client before cross examination. An investigator would have been able to provide the defense attorney with background information before the witness took the stand to make his cross examination more effective. The court indicated that the witness records were sealed because there were threats, however there should have been some proof that the threats came from Omar for he should not be denied his rights if the treats came from a co-defendant however there were no indication that treats came from any of the defendants. There should be a hearing before the witness list are sealed to determine whether there is justification for such a drastic action."

This link is the equivalent of an appendix. It provides quick and easy perpetual access to appellate counsel's brief, which should be read as part of this dissent.